**In the Matter of Anne PILSBURY.**

**No. 286, Docket 88–6097.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 12, 1988.
Decided Jan. 10, 1989.

---

Morton Stavis, New York City (Joan Gibbs, Stephanie Moore, Center for Constitutional Rights, New York City), for appellant.

Before KEARSE, PRATT and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Anne Pilsbury appeals from an order of the United States District Court for the Eastern District of New York, Mark A. Costantino, *Judge,* summarily holding her in criminal contempt of court pursuant to 18 U.S.C. § 401(1) and (3) (1982) and Fed.R. Crim.P. 42(a), and imposing a one thousand dollar fine. On appeal, Pilsbury contends that her conduct did not constitute contempt, as a matter of law. In the alternative, she argues that the trial court erred in punishing her for contempt summarily. Agreeing with appellant's alternative contention, we reverse and remand.

Background

Pilsbury was cocounsel for a group of Salvadorans seeking asylum in the United States. The Immigration and Naturalization Service ("INS") arrested the Salvadorans in New York and transported them to Louisiana. Appellant obtained a temporary restraining order preventing the INS from conducting deportation proceedings in Louisiana. The Salvadorans were then returned to New York, where free legal counsel was available to them. Consequently, the application for injunctive relief was withdrawn as moot, but a claim for damages remained to be adjudicated.

On November 9, 1987, a status conference was held and the court was informed that a settlement possibility existed. Judge Costantino advised the parties to negotiate further, and set the next status conference for January 26, 1988. The judge did not appear on that date, so the parties discussed a continuance date with one of his clerks. The clerk suggested February 29, 1988. Pilsbury acquiesced, apparently with the understanding that if a conflict existed, she could call the clerk to change the date.

On February 25, 1988, Pilsbury called the judge's chambers and advised the clerk with whom she conversed that she had a conflict on February 29. The clerk suggested a March 1, 1988 date. The remainder of the conversation is reported quite differently by Pilsbury and Judge Costantino. The judge accused Pilsbury of engaging in an "unruly tirade" during which she vetoed the March 1 date unless the judge "guaranteed" his attendance at 10:00 a.m. *Bonilla v. Nelson,* No. 86 CV–2353, slip. op at 1–2 (E.D.N.Y. Mar. 29, 1988) ("*Bonilla I*").[1] Pilsbury contests this characterization of the conversation, contending that she was "not abusive," but sought a later date because it was unlikely there would be settlement progress to report by March 1, and sought assurance that Judge Costantino would be in attendance in view of the

---

1. The reference is to Judge Costantino's initial Memorandum of Decision and Order dated March 29, 1988 holding Pilsbury in contempt. There is also a Memorandum of Decision and

Order dated April 14, 1988 under the same caption ("*Bonilla II*") [1988 WL 36984] denying a motion by Pilsbury to vacate or reconsider *Bonilla I.*

prior experience at the status conference on January 26, 1988.

Ultimately, the status conference was rescheduled for March 3, 1988. That conference consisted entirely of an interrogation concerning Pilsbury's status as counsel in the litigation. Pilsbury stated that she was not admitted to practice in the Southern or Eastern Districts of New York, but in response to an inquiry by Judge Costantino whether she was "admitted to the Appellate Division Second Department," Pilsbury asserted that she was admitted to the "Second District." She also claimed to have been admitted *pro hac vice* with respect to the underlying immigration litigation. Following that assertion, the March 3 hearing concluded as follows:

THE COURT: All right. We'll find out. Don't you shake your head lady. Go ahead. We'll find out.

MS. PILLSBURY [sic]: Judge, it's a matter of public record.

THE COURT: You better walk out of the courtroom. I suggest you turn around and walk out of the courtroom.

MS. PILLSBURY [sic]: I will be glad to.

THE COURT: I suggest it.

Pilsbury claims that she subsequently ascertained from opposing counsel that the district court had inquired at the March 3 hearing concerning her admission to the Second *Department*, which inquiry she had mistakenly taken to refer to admission to the Second *Circuit*, to which she was admitted on June 11, 1984. She further asserts that she thereupon, prior to the next status conference on March 10, 1988, advised Judge Costantino's chambers that she was not admitted in the Second Department, explaining her confusion concerning the March 3 inquiry on that subject.

The March 10 conference was also concerned exclusively with Pilsbury's status as counsel. In response to an opening inquiry concerning her admission to the Second Department, Pilsbury stated: "As I indicated I'm not admitted in New York." Further colloquy ensued concerning Pilsbury's other bar admissions, at the conclusion of which Judge Costantino declined to allow Pilsbury to appear *pro hac vice*. The

transcript then states the following conclusion of the conference:

THE COURT: I'll not accept you as an attorney. If you want more problem [sic] I can give you that also. I can give you all the problems that you are looking for. Take it from me, I don't want to give you any problem.

MS. PILSBURY: Nor I, Judge—

THE COURT: I'm telling, I'll not accept the representation of you appearing for this plaintiff.

MS. PILSBURY: This case is about to be settled.

THE COURT: She can come in and say the case is settled.

MS. PILSBURY: I would think the court would want to know the status of the case.

THE COURT: Do yourself a favor. Go ahead. Let her do herself a favor. I'm going to check Maine and District of Colombia [sic] also. I will check their state bars. You had better be admitted to one of those. You had better be. You are not admitted to the State of New York. You put this court through an awful lot to try to find out where you were admitted.

*You go practice your shabby law somewheres [sic] else. Don't you dare practice it in the Eastern District. You no longer will be permitted to practice in any part of this court. You will not be able to practice in this court or the immigration service. This court will see to it.*

Step out of my court. I will give you one more chance, step out of my court.

Held in contempt. One thousand dollar fine paid by 4:00 o'clock there [sic] afternoon. I gave you your chance. Don't shake your head at me. Other lawyers know me well.

Emphasis added.

Although the transcript does not reveal it, both Pilsbury and Judge Costantino are in agreement that toward the end of the quoted exchange, following the emphasized portion of Judge Costantino's comments, Pilsbury inquired whether his remarks

were on the record. According to Pilsbury, this was done "in a normal tone of voice." Two attorneys who were present in the courtroom, one of whom was Pilsbury's cocounsel in the immigration litigation, submitted affidavits supporting Pilsbury's claim that she was neither disrespectful nor obstructive. As will be seen, Judge Costantino viewed the situation differently.

Various counsel then acted as intermediaries in efforts to conciliate the situation, and Pilsbury submitted an apology to Judge Costantino for "not promptly complying with the Court's order to leave the courtroom this morning" and for inadvertently "not complying with Local Rule 2(c) in that I did not file a certificate of good standing of my admission to the District of Columbia and Maine bars." This effort was partially successful, in that the district court, on March 17, 1988, orally reduced the contempt fine to $250.00 upon the condition that it be paid by March 23, 1988. Pilsbury's counsel then raised the question, in a letter to Judge Costantino dated March 23, 1988, "whether an oral order of contempt fixing a specific date for payment is effective without a written order of the court,"[2] further advising that "we respectfully await the written opinion and order of the court, when we shall take such steps as may be deemed appropriate."

Judge Costantino then made a formal determination of contempt in *Bonilla I,* stating in part:

> In the last conference before the Court held on March 10, 1988, counsel acknowledged that she was not admitted to the New York State Bar. As occurred previously, counsel once again was derisive, sarcastic and caustic. The disdain counsel showed for the Court was apparant to all present. After ascertaining that counsel was not properly before the Court, she was ordered to leave. Counsel, shaking her head, making facial expressions in a mocking manner, and walking with exaggerated slowness proceeded to leave. When counsel reached

the bench in the gallery where she and [cocounsel] were seated, counsel committed a final act of defiance. Counsel from her position in the gallery insisted on knowing if this "was on the record." Her tone and demeanor once again belied [sic] her contumacious attitude towards the Court. The Court faced with this insolent behavior, and the now extensive obstruction of the administration of justice, concluded that an order of contempt was necessitated to vindicate the Court's authority.

*Bonilla I* at 9–10.

The district court further stated that although this incident was "sufficient to warrant a finding of contempt separately, the Court may also consider counsel's previous acts and remarks." *Id.* at 10. In view of Pilsbury's failure to pay $250.00 on or before March 23, 1988, the district court ordered that "the fine remains at one thousand dollars with no reduction." *Id.* at 12.

Pilsbury then moved, pursuant to Fed.R. Crim.P. 42 and 18 U.S.C. § 401 (1982) to vacate the district court's memorandum and order, or alternatively for its reconsideration, and for a stay of the order pending disposition of the motion. The district court denied this motion in *Bonilla II.* In response to the assertion that, contrary to Fed.R.Crim.P. 42(a), he had punished Pilsbury for conduct not "committed in the actual presence of the court," Judge Costantino specified that although other conduct had been considered "in assessing [Pilsbury's] contumacious behavior," it was "quite clear that it is only the conduct exhibited by her, in the presence of the Court, on March 10, 1988, that it found to be in contempt." *Bonilla II* at 4.

This appeal followed. Pilsbury paid the $1,000.00 fine on May 26, 1988.

### Discussion

Judge Costantino's contempt order was made pursuant to 18 U.S.C. § 401(1) and (3) (1982), which states:

---

**2.** The implicit reference is to the requirement of Fed.R.Crim.P. 42(a) that when criminal contempt is punished summarily, "[t]he order of contempt shall recite the facts and shall be signed by the judge and entered of record."

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

. . .

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

The procedures for exercising this authority are set forth in Fed.R.Crim.P. 42, which provides in pertinent part:

(a) *Summary Disposition.* A criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

(b) *Disposition Upon Notice and Hearing.* A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. . . . If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

## A. *The Contempt Order on Appeal.*

As is obvious, Pilsbury was convicted summarily under Rule 42(a), which is applicable only where the judge "saw or heard the conduct constituting the contempt and . . . it was committed in the actual presence of the court." *Id.*

Because of the absence of the fundamental due process requirements of notice and an opportunity to be heard which are provided in Rule 42(b), the Supreme Court has held that Rule 42(a) is a rule of necessity,

reserved for "exceptional circumstances" and a "narrow category" of contempt. *Harris v. United States*, 382 U.S. 162, 164–65, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965); *In re Oliver*, 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948). Although the rule is properly applied to acts threatening "order in the courtroom and the integrity of the trial process," *see Codispoti v. Pennsylvania*, 418 U.S. 506, 513–15, 94 S.Ct. 2687, 2691–92, 41 L.Ed.2d 912 (1974), the Supreme Court has made it clear that

before the drastic procedures of the summary contempt power may be invoked to replace the protections of ordinary constitutional procedures there must be an actual obstruction of justice. . . .

*In re McConnell*, 370 U.S. 230, 234, 82 S.Ct. 1288, 1291, 8 L.Ed.2d 434 (1962); *accord, In re Little*, 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708 (1972) (per curiam); *Pennsylvania v. Local Union 542, Int'l Union of Operating Eng'rs*, 552 F.2d 498, 509 (3d Cir.), *cert. denied*, 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977); *United States v. Proffitt*, 498 F.2d 1124, 1128 (3d Cir.), *cert. denied*, 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974).

Unless there is a "compelling reason for an immediate remedy," *United States v. Wilson*, 421 U.S. 309, 318, 95 S.Ct. 1802, 1807, 44 L.Ed.2d 186 (1975), Rule 42(b) is the "normal procedure" to be followed. *Harris*, 382 U.S. at 164–65, 86 S.Ct. at 354. Further, the Fifth Circuit ruled in *United States v. Brannon*, 546 F.2d 1242, 1249 (5th Cir.1977), that before finding contempt summarily, a judge should warn the potential contemnor of the consequences of persisting in his conduct and allow an opportunity to be heard.

Applying these principles to the instant case, we conclude that considering the allegedly contemptuous behavior and surrounding circumstances, there was no "compelling reason for an immediate remedy," and that the "normal procedure" of Rule 42(b) should have been utilized. According to Judge Costantino's description of events, Pilsbury, upon being ordered to leave the courtroom, proceeded "with exag-

gerated slowness" and only after asking if the judge's disparaging and threatening comments were "on the record." Although Judge Costantino refers to Pilsbury's actions as causing an "extensive obstruction of the administration of justice," nowhere in the record is there evidence that this was the case.

Moreover, we note that Pilsbury never knew or had reason to know that she was in danger of being held in contempt, nor was she provided with any opportunity to be heard concerning the matter. In the case cited by Judge Costantino to support the contempt conviction here, counsel was held in contempt only after receiving seven warnings that he was violating a direct order, including four explicit warnings that if he continued to disobey the judge's rulings he would be held in contempt, and after stating his position on those rulings to the court. *See Bonilla I* at 10 (citing *Pennsylvania v. Local Union 542, Int'l Union of Operating Eng'rs*, 552 F.2d 498 (3d Cir.), *cert. denied*, 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977)); *cf. United States v. Seale*, 461 F.2d 345, 366 (7th Cir.1972) (warning required as to "conduct that could not be reasonably believed improper when committed[;] ... absence of any warning that borderline conduct is regarded [as] contumacious could be fatal to a contempt citation therefor").

While the Fifth Circuit appears to require notice and at least a brief opportunity to be heard in all circumstances, *see Brannon*, 546 F.2d at 1249, we believe the *Brannon* dictum may go too far, and in any event limit our disposition to the requirements of the present case. We accordingly rule that where a reasonable person would not know that the court considered his conduct contemptuous, warning is required before a summary contempt conviction may be made, and some opportunity to be heard must be provided unless inconsistent with the preservation of order.[3]

Here, because there is no evidence of an obstruction of justice, and because Pilsbury was provided no notice that her actions would subject her to contempt, nor any opportunity to be heard, the summary contempt conviction must be reversed.

B. *Proceedings upon Remand.*

Pilsbury contends that, as a matter of law and aside from any procedural deficiencies in the proceedings below, the conduct for which she was convicted could not constitute contempt. She argues that the substantive crime of contempt requires both a material obstruction of the judicial process and a specific intent to obstruct the law.

This court has held that:

> To warrant a conviction in criminal contempt, the contemnor's conduct must constitute misbehavior which rises to the level of an obstruction of and an imminent threat to the administration of justice, and it must be accompanied by the intention on the part of the contemnor to obstruct, disrupt or interfere with the administration of justice.

*In re Williams*, 509 F.2d 949, 960 (2d Cir. 1975) (citing *Eaton v. City of Tulsa*, 415 U.S. 697, 94 S.Ct. 1228, 39 L.Ed.2d 693 (1974), *In re Little*, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972), and *United States v. Seale*, 461 F.2d 345, 367–68 (7th Cir.1972)); *cf. United States v. Martin*, 525 F.2d 703 (2d Cir.) (finding of obstruction of justice unnecessary for conviction of violation of 18 U.S.C. § 401(3) (1982) for refusal to answer question at trial), *cert. denied*, 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed.2d 410 (1975).

We agree that there is grave doubt, on the record presented to us, that the substantive requirements of criminal contempt can be met by proof beyond a reasonable doubt, *see In re Williams*, 509 F.2d at 960, even if there is compliance upon remand with the procedural requirements of Rule 42(b). In the event, however, that there are to be further proceedings concerning this matter, it is clear that they cannot be

---

**3.** We do not reach the question, which is not presented by this record, whether an opportunity to be heard must be provided where it is clear that the conduct in question is contemptuous, but provision of an opportunity to be heard would not be disruptive.

conducted before Judge Costantino, except in the unlikely event of Pilsbury's consent that they be so conducted. This follows from the provision in Rule 42(b) that: "If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent." *Cf. Taylor v. Hayes,* 418 U.S. 488, 501–02, 94 S.Ct. 2697, 2704–05, 41 L.Ed.2d 897 (1974) (due process requires criminal contempt hearing before different judge upon remand where trial judge became "embroiled in a running controversy with petitioner" and "there was a mounting display of an unfavorable personal attitude toward petitioner, his ability, and his motives").

Judge Costantino clearly regarded Pilsbury's conduct as a personal affront to the court. In *Bonilla I,* the judge stated that at the March 10, 1988 status conference, Pilsbury "again was derisive, sarcastic and caustic," and that "[t]he disdain counsel showed for the Court was apparent to all present." *Id.* at 9. He also viewed Pilsbury as "mocking" the court, displaying a "contumacious attitude" and "insolent behavior," and "committ[ing] a final act of defiance" in asking if the judge's comments that she would be barred from practice in the Eastern District or the INS were "on the record." *Id.* And again, in *Bonilla II,* Judge Costantino accused Pilsbury of "insolent, disrespectful behavior" on March 10, 1988, *id.* at 3, and of making "rude and disrespectful remarks" during the February 25, 1988 telephone conversation with one of the judge's clerks, *id.* at 4.

Rule 2(d)(3) of the E.D.N.Y. Rules for the Division of Business among District Judges, which calls for random reassignment "[u]pon reversal of a judgment and a direction for a retrial, unless the mandate of the appellate court directs otherwise," provides an appropriate procedure for this situation, although not applicable by its terms to this remand of a contempt order where no trial or hearing was conducted in the first instance. *See United States v. Seale,* 461 F.2d at 371 (upon reversal of contempt conviction, case remanded to district court executive committee for reas-

signment pursuant to its rules). The district court judge to whom the case is reassigned should determine whether any further proceedings are appropriate, and conduct the hearing required by Rule 42(b) in the event that an affirmative determination is made.

### Conclusion

The order convicting appellant of criminal contempt is reversed and the matter is remanded for any further proceedings that may be advised, not inconsistent with this opinion.