**UNITED STATES of America, Appellee**

**v.**

**Deatrick MARSHALL, Defendant–Appellant.**

**Docket No. 02–1706.**

United States Court of Appeals, Second Circuit.

Argued: May 12, 2003.

Decided: June 8, 2004.

William Clauss, Federal Public Defender, Western District of New York (Jay S. Ovsiovitch, of counsel), Rochester, New York, for Defendant–Appellant.

Stephan J. Baczynski, Assistant United States Attorney (Michael A. Battle, United States Attorney for the Western District of New York, Buffalo, New York), for Appellee.

Before: OAKES, WINTER, and KATZMANN, Circuit Judges.

WINTER, Circuit Judge.

Deatrick Marshall appeals from then-Chief Judge Larimer's decision finding a "Grade A" supervised release violation, imposing a sentence of 24 months imprisonment for that violation, and adding a consecutive term of 12 months imprisonment for criminal contempt. We also affirm as to the "Grade A" violation of supervised release and the 24–month sentence. We affirm the contempt conviction but reduce the sentence to six months, as the government concedes the maximum is six months for summary contempt.

## BACKGROUND

On October 20, 2000, Marshall pled guilty to one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to 18 months in prison followed by three years of supervised release. On August 28, 2002, during the supervised release period, the United States Probation Office sought a warrant for Marshall's arrest for allegedly violating the terms of his supervised release. The Probation Office charged that Marshall committed three state crimes, namely two traffic offenses and a violent robbery.

The robbery involved a brutal assault of a sixty-one year old female who was a restaurant bookkeeper. The assault occurred in the restaurant manager's office. The bookkeeper had been bludgeoned and kicked, suffering a fractured skull, broken cheekbone, broken jawbone, broken ribs, a collapsed lung, and serious lacerations to her head. Bottles found in the office had apparently been used in the assault. Marshall's fingerprints were found on one of the bloodstained bottles. That bottle was a decorative piece that had been in the office for about five months. There was no evidence that Marshall had ever been in the restaurant before the night of the assault. Nor was there any explanation other than that assault for the presence of his fingerprints on the bottle.

Judge Larimer found by a preponderance of the evidence that Marshall had violated the terms of his supervised release by committing the violent robbery, a "Grade A" violation, and at least one traffic violation, a "Grade C" violation.[1] At the sentencing hearing on October 24, 2002, the following colloquy occurred:

THE COURT: Anything, Mr. Marshall, you wish to say concerning this matter or sentencing?

THE DEFENDANT: Yes. First of all, I would like to say—I would like to thank Mr. Clauss for representing me. He's always done a terrific job in representing me to the best of his ability.

As far as everything goes, I guess I can just assume you're going to sentence me to the maximum end of the guideline range. But no sense in looking, knowing that I don't feel there's no justice in the court anymore, you know what I'm saying? Because I've been treated with such injustice going through the court system, I guess because I'm a minority, poor, whatever, can't afford to pay anyone off or anything. So I guess you gonna charge me accordingly, 24

---

1. The "Grade A" violation exposed Marshall to an 18 to 24–month sentence. U.S.S.G. § 7B1.4(a). The "Grade C" violation exposed Marshall to a sentence of 5 to 11 months. *Id.*

months. So all I can say is kiss my ass and your wife can suck my dick.

MR. CLAUSS: Deatrick, you really shouldn't have said that.

THE COURT: Mr. Marshall, anything else you'd like to say?

THE DEFENDANT: I spoke my peace [sic].

THE COURT: Yes, you did. Yes, you did, in typical fashion.

Judge Larimer then sentenced Marshall to the top of the Guidelines range, 24 months. Judge Larimer also summarily found Marshall in criminal contempt of court and sentenced him to 12 months imprisonment for that offense. The ruling, delivered orally, was as follows:

> THE COURT: And I also find because of your outburst in court in using the language that you just used, that that constitutes contempt of court and an obstruction and a disregard for the authority of the Court and will further impose a sentence of 12 months in jail to run consecutive to the 24 months that I just imposed . . . .

The summary contempt conviction was pursuant to 18 U.S.C. § 401(1) and Fed. R.Crim.P. 42(b).

## DISCUSSION

Marshall challenges his contempt conviction and sentence on four grounds: (i) his statement did not constitute criminal contempt because Marshall neither obstructed nor intended to obstruct the administration of justice; (ii) the district court violated his Sixth Amendment rights by sentencing him to 12 months' imprisonment without a jury trial; (iii) the 12-month sentence was excessive and disproportionate to his conduct; and (iv) his conviction for a "Grade A" violation of supervised release was based on legally insufficient evidence.

We review a district court's contempt finding for abuse of discretion. *United States v. Wilson,* 421 U.S. 309, 319, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975); *City of New York v. Local 28, Sheet Metal Workers' Int'l Ass'n,* 170 F.3d 279, 283 (2d Cir.1999). We also review a finding of a violation of supervised release for abuse of discretion. *United States v. Barth,* 899 F.2d 199, 202 (2d Cir.1990).

Because the summary contempt sanction is not subject to the usual requirements of a jury trial or notice and opportunity to be heard, summary contempt is a "rule of necessity, reserved for 'exceptional circumstances' and a 'narrow category' of contempt." *In re Pilsbury,* 866 F.2d 22, 26 (2d Cir.1989) (quoting *Harris v. United States,* 382 U.S. 162, 164–65, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965)). Fed. R.Crim.P. 42(b)[2] allows summary proceedings for criminal contempt based on misconduct in the court's presence. This scheme comports with commonsense.

---

**2.** Fed.R.Crim.P. 42 reads in pertinent part:

(a) Disposition After Notice. Any person who commits criminal contempt may be punished for that contempt after prosecution on notice.

\* \* \* \* \* \*

(3) Trial and Disposition. A person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides . . . . If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents. Upon a finding or verdict of guilty, the court must impose the punishment.

(b) Summary Disposition. Notwithstanding any other provision of these rules, the court (other than a magistrate judge) may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies . . . . The contempt order must recite the facts, be signed by the judge, and be filed with the clerk.

Both the court's role as an eyewitness and the desirability of a swift response militate against observance of the usual procedural safeguards. The availability of a swift response both stops the misconduct at hand and deters similar behavior in other cases by insuring that those tempted to engage in such behavior know that deliberate outbursts or disruption will not be allowed to go on for more than the briefest period of time.

■ Looking at the language of the Rule and its underlying policy, the use of summary contempt proceedings in the present case would seem unexceptional. The statement that the district judge could "kiss my ass and your wife can suck my dick" was calculated, egregious, in the presence of, and directed at, the court. It was self-evidently intended to show contempt for the court and was not mitigated by any contemporaneous event that might have induced Marshall to surrender to an atypical impulse soon regretted. We would ourselves show contempt for the institution to hold that Marshall was not in contempt of court.

Appellant argues that his conduct was not subject to contempt sanctions because it did not obstruct the administration of justice by interrupting or slowing the proceedings. Rather, the district judge invited Marshall to speak; he spoke briefly and then stopped. Notwithstanding the Rule's omission of any language referring to obstruction of justice, Marshall argues that a literal obstruction of justice—interruption, delay, etc.—must occur for summary contempt proceedings to be justified and that brief, verbal misconduct alone, no matter how egregious, cannot suffice. In that regard, he relies upon language found in various decisions.

For example, in referring to the underlying statute, 18 U.S.C. § 401(1), the Supreme Court has stated that although it "undoubtedly shows a purpose to give courts summary powers to protect the administration of justice against immediate interruption of court business, it also means that before the drastic procedures of the summary contempt power may be invoked to replace the protections of ordinary constitutional procedures there must be an actual obstruction of justice." *In re McConnell*, 370 U.S. 230, 234, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962); *see also United States v. Giovanelli*, 897 F.2d 1227, 1230 (2d Cir.1990) (stating that the requisites for summary punishment of contempt are "(1) contemptuous misbehavior, (2) committed in the actual presence of the court, (3) which obstructs the administration of justice"); *In re Williams*, 509 F.2d 949, 960 (2d Cir.1975) ("To warrant a conviction in criminal contempt, the contemnor's conduct must constitute misbehavior which rises to the level of an obstruction of and an imminent threat to the administration of justice, and it must be accompanied by the intention on the part of the contemnor to obstruct, disrupt or interfere with the administration of justice.").

Much of the language used in such decisions is the result of the statement in *McConnell* quoted above. That decision was based on Section 401, which states in pertinent part that:

A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice[.]

18 U.S.C. § 401(1). The statutory language allows summary contempt adjudications for: (i) misbehavior to which the court is an eyewitness or (ii) misbehavior that is outside the court's presence but near enough to obstruct justice.

The facts in *McConnell* involved a lawyer's threatening to continue to pursue a line of questioning erroneously ruled impermissible by the trial judge. 370 U.S. at 230–31, 82 S.Ct. 1288. The threat to continue the line of questioning was caused by opposing counsel's insistence that then-Fed. R. Civ. P. 43(c) be literally followed, and that, as required by that Rule, an offer of proof come after, rather than precede, the questioning of witnesses.[3] Counsel understandably feared that non-compliance with the Rule—a failure to ask the questions—would leave the issue unpreserved for appeal. However, counsel ceased pursuit of the line of questioning and therefore never carried out the threat. Nevertheless, he was held in contempt. The contempt conviction was invalidated by the Supreme Court. The ground relied upon was that the attorney's unfulfilled threat itself did not constitute a literal obstruction of justice. *Id.* at 235–36, 82 S.Ct. 1288.

Whether there was verbal "misbehavior" in *McConnell* is less than clear because, as the Supreme Court was at pains to point out, counsel's threat was both provoked by his adversary's tactics and motivated by his good faith desire to preserve a meritorious issue for appeal. *Id.* at 231–32, 82 S.Ct. 1288. His conduct might not, therefore, violate Section 401(1) unless it constituted a literal obstruction of justice, one type of misbehavior. The language from that decision quoted above can be read against that background as simply leaving open the possibility of contempt proceedings for lawyers who actually persist in violating an order to cease a line of questioning. However, the lawyer in *McConnell* never carried out the threat, and there was no consequent delay in the proceedings. To read *McConnell* as holding that verbal "misbehavior" alone cannot be punished under Section 401(1) may be a considerable overreading of that decision. Such an overreading may also have been facilitated by the presence of the words "obstruction of justice" in Section 401(1)—which are not found in Rule 42(b)—even though the statutory language clearly authorizes contempt proceedings for "misbehavior" alone.

In any event, the language quoted above has not led courts of appeals, including ourselves, to forbid summary punishment for conduct such as that engaged in by appellant even though no literal obstruction has occurred. For example, in *United States v. Bari*, we upheld a summary contempt conviction for a defendant's "savage outburst" at the district judge during sentencing, deeming the objection to it on appeal unworthy of discussion, though nothing indicated that this outburst literally slowed court proceedings. 750 F.2d 1169, 1175 (2d Cir.1984).

In fact, the decisional language suggesting that summary contempt proceedings are limited to literal obstructions of justice is matched by other language recognizing a broad power to punish attorneys or parties by contempt proceedings for "disrespectful remarks to the court, opposing counsel, or other parties." *United States v. Lumumba*, 794 F.2d 806, 809 (2d Cir. 1986); *see also People ex rel Abrams v. Terry*, 45 F.3d 17, 23 (2d Cir.1995)

---

**3.** Former Fed.R.Civ.P. 43(c), which was abrogated by a 1972 amendment taking effect July 1, 1975, provided in part:

In an action tried by a jury, if an objection to a question propounded to a witness is sustained by the court, the examining attorney may make a specific offer of what he expects to prove by the answer of the witness. The court may require the offer to be made out of the hearing of the jury. The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon.

48

(" 'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates.' ") (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).

Many courts allowing summary contempt proceedings for "misbehavior" have deemed it an "obstruction of justice" in what may be—given the language of Section 401(1) as a whole and the factual context of *McConnell*—an unnecessary overreading of those words. *See Gordon v. United States,* 592 F.2d 1215, 1217 (1st Cir.1979) ("Although the line between insult and obstruction is difficult to discern, there is a point at which mere words are so offensive and so unnecessary that their very utterance creates a delay which is an obstruction of justice."); *see also United States v. Thoreen,* 653 F.2d 1332, 1340 (9th Cir.1981) (citing *Gordon* and stating that a pro se litigant's "vituperative outburst ... constitutes an obstruction because it causes a delay in the time involved in the litigant's delivery of his outburst and in the time necessary to get the court proceedings back on track"), *United States v. Seale,* 461 F.2d 345, 370 (7th Cir.1972) (stating that "at some point disrespect and insult become actual and material obstruction" and that "the very delay of the proceedings occasioned by a disrespectful outburst or other misbehavior may be sufficient to constitute a material obstruction").

The actual results reached by courts, therefore, are consistent with the language of Section 401(1) authorizing criminal contempt sanctions for egregious misconduct in the court's presence whether or not a literal obstruction of justice occurs. These results simply recognize that there is an implicit standing order that parties, counsel, and courtroom attendees refrain from direct and egregious insults to judicial authority. *Cf. Sacher v. United States,* 343 U.S. 1, 9, 72 S.Ct. 451, 96 L.Ed. 717 (1952) ("During a trial, lawyers must speak ... with relevance and moderation. These are such obvious matters that we should not remind the bar of them were it not for the misconceptions manifest in this case."). To hold otherwise might encourage a culture of "can you top this" in hurling egregious—albeit brief—insults at the court that would undermine respect for the rule of law itself.

 Of course, not every impolite or vulgar remark suffices to justify contempt proceedings. For example, an isolated instance of foul language, not directed at the court or any of its officers, is not necessarily contemptuous. *Eaton v. City of Tulsa,* 415 U.S. 697, 698, 94 S.Ct. 1228, 39 L.Ed.2d 693 (1974) (per curiam) ("Th[e] single isolated usage of street vernacular, not directed at the judge or any officer of the court, cannot constitutionally support the conviction of criminal contempt."). Moreover, in cases less egregious than the present one, a court should warn an attorney, party, or attendee that further instances of particular behavior will be deemed contemptuous before actually charging the offender with contempt. *See Pilsbury,* 866 F.2d at 26. None of these caveats, however, undermines the fact that a verbal attack can be so unnecessary and so insulting to judicial authority as to constitute, without prior warning, contempt. Marshall's conduct easily meets that standard.

 However, we cannot affirm Marshall's sentence. As the government concedes, a defendant has a right to a jury trial before being sentenced to a prison term of more than six months for criminal contempt. *Codispoti v. Pennsylvania,* 418 U.S. 506, 512, 516–17, 94 S.Ct. 2687, 41

L.Ed.2d 912 (1974); *see also Bloom v. Illinois,* 391 U.S. 194, 198–200, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) (holding that defendant has right to trial by jury before conviction of contempt punishable by severe punishment); *United States v. Twentieth Century Fox Film Corp.,* 882 F.2d 656, 662 & n. 4 (2d Cir.1989) (noting in *dicta* that a defendant has a right to a jury trial whenever the penalty imposed is greater than six months). We therefore order that Marshall's sentence for criminal contempt be reduced to six months' imprisonment.