897 F.2d 1227
 UNITED STATES of America, Appellee,
v.
Federico GIOVANELLI, Steven Maltese, and Carmine Gualtiere,
Defendants.
In re Criminal Contempt Order of Judge Motley, entered on
May 22, 1989, against Lawrence HOCHHEISER, an Attorney,
Appeal of Lawrence HOCHHEISER, Esq.
 No. 459, Docket 89-1274.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 20, 1989.
Decided Feb. 15, 1990.
 
 Vivian Shevitz, (Georgia J. Hinde, New York City, of counsel), for appellant Lawrence Hochheiser.
 Adam S. Hoffinger, Asst. U.S. Atty. for the S.D.N.Y. (Otto G. Obermaier, U.S. Atty. for the S.D.N.Y., David E. Brodsky, Asst. U.S. Atty., New York City, of counsel), for appellee U.S.
 Before OAKES, Chief Judge, CARDAMONE, Circuit Judge and POLLACK, District Judge*
 CARDAMONE, Circuit Judge:
 
 
 1
 We review an order that summarily held an attorney in criminal contempt for his courtroom misbehavior on two separate occasions, both occurring in the judge's presence. On the first occasion, defense counsel posed a series of questions in cross-examination that the trial judge believed she had previously ruled improper; on the second occasion, counsel addressed angry and defiant remarks to the judge as a result of the contempt sanction she had imposed for his earlier conduct. Words of reproach directed in open court to a judge's order during the course of trial must be dealt with swiftly and firmly, since to allow such conduct to go unsanctioned risks the serious erosion of the court's authority to conduct the proceedings before it.
 
 
 2
 Lawrence Hochheiser appeals from an order entered on May 22, 1989 in the United States District Court for the Southern District of New York (Motley, J.), that fined him $250 for repeatedly attempting to lay a foundation to admit a document into evidence after the court had ruled the document inadmissable. An additional $500 fine was imposed for his deliberately challenging remarks addressed to the trial court in the presence of the jury. For the reasons that follow, we reverse the order insofar as it imposed a $250 fine, but affirm the $500 fine.
 
 FACTS
 
 3
 Attorney Hochheiser's $750 contempt sanction occurred during his defense of Federico Giovanelli, who, along with two co-defendants, was being tried for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Secs. 1962(c), (d) (1988), based on underlying acts of illegal gambling, loansharking, murder and attempted murder. See United States v. Giovanelli, No. S 88 Cr. 954 (CBM) (S.D.N.Y. May 19, 1989). It is unnecessary to set forth the details of the underlying trial in the process of which the incidents that led to the contempt sanctions arose. The hotly contested nature of the trial and the severity of the charges against the three defendants may be gleaned from allegations that the defendants had murdered police officer Anthony Venditti and attempted to murder police officer Kathleen Burke. The first contempt citation in the course of the two and one-half months trial was levied against counsel for one of Giovanelli's co-defendants. He was sanctioned by the district court on May 16, 1989 for improper remarks made in his opening statement. The district court later withdrew and rescinded the contempt citation for this incident. Two days later--on May 18--Hochheiser was sanctioned during his cross-examination of a government witness, Special Agent Michael Gillispie of the Federal Bureau of Investigation.
 
 
 4
 Gillispie's testimony on direct examination related to his observations of defendant Giovanelli on September 10, 1985, approximately three and a half years earlier. Gillispie testified that on that date he saw Giovanelli depart from his residence in Queens at 5:07 p.m. in a maroon BMW bearing New York license plate number 5272 BEZ. He stated that the BMW arrived at 208 Sullivan Street in Manhattan at approximately 5:31 p.m. He observed Giovanelli exit the automobile and enter 208 Sullivan Street. Gillispie also noted that at 5:36 p.m. Giovanelli again entered 208 Sullivan Street.
 
 
 5
 On cross-examination Attorney Hochheiser focused on a written surveillance report used in the investigation and furnished by the government to defense counsel. He elicited the fact that on the morning of the trial Gillispie had studied the surveillance report or log in order to memorize the details of his 1985 observations. Defense counsel then sought to have the witness read portions of the log into the record, but the trial judge would not permit Gillispie to read from it, stating that the document had not been received in evidence. Hochheiser then offered the report in evidence, but the trial court refused to receive it, concluding that it was hearsay. Judge Motley then ruled that the report could be used to refresh the witness' recollection, but that it would not be admitted into evidence, and instructed counsel: "Don't ask him to read from the document." After further questioning about the log, Hochheiser offered it in evidence as a past recollection recorded. After a brief voir dire by the government, the court determined that Gillispie's recollection had already been refreshed by reviewing the report, and that the report itself was inadmissable.
 
 
 6
 Appellant next began a line of questioning seeking to impeach the credibility of Gillispie's testimony on the grounds that his present memory of the events of September 10, 1985 was flawed. The questions sought to determine what part of the agent's testimony he actually recalled based on his observations in 1985 and what portions he recalled based on studying the log. Believing that this line of questioning was another attempt on counsel's part to lay a foundation for the admission of the report as a past recollection recorded, the trial judge stated: "I have already ruled that that document is not coming in evidence. Move on to some other subject." When Hochheiser persisted in his attempt to impeach the witness' memory, the court and counsel had the following exchange:
 
 
 7
 THE COURT: Again, I have already ruled on that subject.
 
 
 8
 MR. HOCHHEISER: I didn't ask to have the report put in. I am asking him if he relied on the accuracy of the report.
 
 
 9
 THE COURT: You have already gone over it. So there is no use laying a foundation for your motion. I have already ruled on it.
 
 
 10
 The following question was then asked by Hochheiser: "[A]re you relying on your recollection of seeing Mr. Giovanelli enter 208 Sullivan Street, or are you telling us that you know it to be so for some other reason?"
 
 
 11
 At that point the court excused the jury and held Hochheiser in contempt of court. A fine of $250 was imposed for "wilfully disobey[ing] and violat[ing] the rulings of the court by repeatedly attempting to get an FBI agent's written report into evidence as a past recollection recorded in contravention of the court's prior determination against admission of such report." Judge Motley then ordered that the jury be brought back, at which point Attorney Hochheiser began to protest the imposition of sanctions. The judge stated that she had ruled, and would not entertain further argument on the issue. She again ordered that the jury be returned. As the jury was filing in, Hochheiser stated "I won't pay. You can put me in jail, Judge." Judge Motley excused the jury and fined Hochheiser $500 for his show of defiance before the jury.
 
 
 12
 On May 22, 1989 the district court issued a written certification and order pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure that specified the basis for the contempt citations. Payment of the $750 in fines was stayed until the end of the trial.
 
 DISCUSSION
 A. Summary Contempt Power
 
 13
 Contempt may be traced back to the King's Court or Curia Regis. After the Norman Conquest the King's Court became a supreme royal court national in character, see T. Plucknett, A Concise History of the Common Law 132-33 (2d ed.1936), so that offenses against it were said to be offenses against the Crown. That is the lineage in this country for a contempt of court being considered an offense against the state rather than an offense against the presiding judge personally. Summary punishment is warranted for contempt in the face of the court because of the state's need to maintain the court's dignity as well as public respect for it and its orders. 17 Am.Jur.2d Contempt Sec. 2 (1964).
 
 
 14
 The power to impose punishment summarily for contempt is now conferred on a federal court by statute. See 18 U.S.C. Sec. 401 (1988). Insofar as here pertinent, that statute grants a court of the United States "power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as--(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." Sec. 401(1). Federal Rule of Criminal Procedure 42(a) was promulgated to regulate the exercise of the power conferred by Sec. 401. Rule 42(a) provides as follows:
 
 
 15
 Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.
 
 
 16
 Thus, the statute and the rule establish the requisites for summary punishment of contempt to be (1) contemptuous misbehavior, (2) committed in the actual presence of the court, (3) which obstructs the administration of justice. Such summary assertion of a court's authority has been exercised, according to Blackstone, "as early as the annals of our law extend." 4 W. Blackstone, Commentaries 282-83 (Univ. of Chicago ed.1979). A federal judge has always had the power upon the commission of contempt in open court on its own initiative, without taking further proof, entertaining an explanation, or conducting a hearing to hold the culpable person in contempt and to impose such punishment as the court, in the exercise of its discretion, thinks fit. Cooke v. United States, 267 U.S. 517, 534-35, 45 S.Ct. 390, 394, 69 L.Ed. 767 (1925); Ex Parte Terry, 128 U.S. 289, 309, 9 S.Ct. 77, 81, 32 L.Ed. 405 (1888).
 
 
 17
 The power to punish summarily misbehavior occurring in the face of a trial court, without first giving notice and an opportunity to be heard, is upheld today in "exceptional circumstances" see Harris v. United States, 382 U.S. 162, 164, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965), and "where immediate corrective steps are needed to restore order and maintain the dignity and authority of the court." Johnson v. Mississippi, 403 U.S. 212, 214, 91 S.Ct. 1778, 1779, 29 L.Ed.2d 423 (1971) (per curiam); see United States v. Ruggiero, 835 F.2d 443, 444 (2d Cir.1987); United States v. Martin-Trigona, 759 F.2d 1017, 1024-25 (2d Cir.1985).
 
 
 18
 Appellant contends that in this case there was no "compelling reason for an immediate remedy," see United States v. Wilson, 421 U.S. 309, 318, 95 S.Ct. 1802, 1807, 44 L.Ed.2d 186 (1975), and therefore Rule 42(b)--requiring notice and a hearing before issuing a contempt order--was the appropriate remedy. We disagree. When the contumacious conduct occurs in open court during an ongoing trial, summary disposition under Rule 42(a) is appropriate. See id. at 315, 319, 95 S.Ct. at 1806, 1808. Rule 42(b) may in some circumstances be a more appropriate procedure for contempt occurring in the court's presence. See Harris, 382 U.S. at 166-67, 86 S.Ct. at 355-56 (grand jury proceedings); In re Pilsbury, 866 F.2d 22, 26-27 (2d Cir.1989) (status conference); United States v. Lumumba, 741 F.2d 12, 15-17 (2d Cir.1984) (adjudication and punishment deferred until after trial). But during a trial, the court has a special need to maintain order and a deliberative atmosphere because a " 'courtroom is a hallowed place where trials must proceed with dignity.' " Codispoti v. Pennsylvania, 418 U.S. 506, 514, 94 S.Ct. 2687, 2692, 41 L.Ed.2d 912 (1974) (quoting Illinois v. Allen, 397 U.S. 337, 351, 90 S.Ct. 1057, 1065, 25 L.Ed.2d 353 (1970) (Douglas, J., concurring)). Thus, use of Rule 42(a) under the circumstances of this case was appropriate. We turn now to discuss the two separate contempts found here.
 
 B. The First Contempt
 
 19
 Appellate courts are charged with a duty to guard against abuses of discretion in trial courts' use of Rule 42(a). See Wilson, 421 U.S. at 319, 95 S.Ct. at 1808. When an attorney is held in contempt for continuing to press a legal claim in contravention of a court order, it is an appellate court's duty to safeguard not only the judge's power to free his courtroom from disruption, but also to safeguard counsel's ability to make good-faith efforts to present his client's case. See In re McConnell, 370 U.S. 230, 236, 82 S.Ct. 1288, 1292, 8 L.Ed.2d 434 (1962). Counsel has a right to press argument on a court and to direct a line of questioning of a witness that may not at the moment appear relevant to the trial judge. See Maness v. Meyers, 419 U.S. 449, 459, n. 7, 95 S.Ct. 584, 591, n. 7, 42 L.Ed.2d 574 (1975); Sacher v. United States, 343 U.S. 1, 9, 72 S.Ct. 451, 455, 96 L.Ed. 717 (1952). Attorney Hochheiser claims that his line of questioning of Agent Gillispie was a proper exercise of his obligation to represent his client zealously, and that the court's ruling on the admissability of the surveillance log did not clearly forbid him from attempting to impeach the witness' memory.
 
 
 20
 To sustain a finding of contempt, the order allegedly violated must have been reasonably clear. See In re Williams, 509 F.2d 949, 960 (2d Cir.1975); accord United States v. Joyce, 498 F.2d 592, 596 (7th Cir.1974); see also United States v. Lumumba, 794 F.2d 806, 810 (2d Cir.) ("when the directive is clear and counsel understands it, he must obey even if he feels his obedience may risk prejudicing his client's substantive case."), cert. denied, 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986). The certification order entered by Judge Motley states that she viewed Hochheiser's line of questioning as an attempt to lay a foundation to admit the surveillance log in evidence as a past recollection recorded after she had ruled the document inadmissable. Hochheiser asserts that he was merely attempting to impeach the witness with respect to his memory of past events, which is, of course, a common litigation tactic. See 3 Wigmore, Wigmore on Evidence Sec. 730 (Chadbourn rev.1970).
 
 
 21
 Past recollection recorded is a common law exception to the hearsay rule, see C. McCormick, McCormick on Evidence Sec. 299 (2d ed.1972), codified in Fed.R.Evid. 803(5): "Recorded Recollection.--A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly...." Although a similar line of questioning may be used either to lay a foundation to admit a document as a past recollection recorded or to impeach a witness' memory, the record reflects that here the judge's order applied to the former and not to the latter line of questioning. Hence, the trial judge by its ruling was foreclosing one line of inquiry, while defense counsel was pursuing another.
 
 
 22
 Looking at the court's order in this light, it cannot be concluded beyond a reasonable doubt that it was willfully disobeyed. See Williams, 509 F.2d at 960. As a consequence, the first contempt sanction is reversed insofar as it fined Hochheiser $250 upon a finding that he was attempting to lay a foundation for admission of the surveillance log in evidence.
 
 C. The Second Contempt
 
 23
 The second contempt was based on an insolent remark made directly to the judge, rather than a failure to obey a court order. Although the contempt power should not be used in a manner that impinges on legitimate advocacy, a judge need not tolerate disrespect or a deliberate show of defiance in open court. To affront the dignity of the court the misbehavior need not insult the judge personally, but may consist of threats, disrespect or other like behavior. E.g., Codispoti, 418 U.S. at 514, 94 S.Ct. at 2692; Cooke, 267 U.S. at 536, 45 S.Ct. at 394. An attorney's desire to vent his frustration at the court over an adverse evidentiary ruling--even over what counsel perceives as an improper contempt citation--does not take precedence over the overriding need to preserve a court's authority and to maintain order in the courtroom. Had Hochheiser desired to contest the adverse citation his remedy was to pursue an appeal, not to defy the court. See, e.g., Maness, 419 U.S. at 459-60, 95 S.Ct. at 591-92; Sacher, 343 U.S. at 9, 72 S.Ct. at 455; Lumumba, 794 F.2d at 810.
 
 
 24
 Counsel asserts he was unaware of the fact that the jury had returned, and that he was entitled to a hearing on the issue of his awareness of its presence. The trial transcript reveals the court reporter had noted the jury re-entering the courtroom before Hochheiser spoke. Further, the trial judge's finding that Hochheiser was aware at the time when he spoke that several members of the jury were in the back of the courtroom is persuasive. A trial judge is within her rights as the presiding judicial officer at a trial to adjudicate counsel in contempt of court for challenging her authority in the presence of several members of the jury, even though the entire jury was not present. Cf. United States v. Marra, 482 F.2d 1196, 1201 (2d Cir.1973) (presence of jury did not significantly add to the disruption caused).
 
 
 25
 Additionally, although the district court's prior contempt citation of other counsel was later withdrawn, it served to put counsel on notice that the court intended to issue contempt fines for conduct it thought disruptive. When counsel for Giovanelli's co-defendant was sanctioned earlier in the trial, the court stated that "the purpose of that is to curb any future contempt on the part of any lawyer in this case" and "I hope we don't have this occur again in this trial, but if it should, if I get another lawyer disobeying my order, the amount is going up to $500." This was not a case where a "reasonable person would not know that the court considered his conduct contemptuous," Pilsbury, 866 F.2d at 27.
 
 
 26
 In sum, it is plain that there was in this second instance contemptuous behavior committed in the actual presence of the court. Here was not only an expression of frustration, but at the same time contempt for the authority of the court. This misbehavior required the jury, which had just returned to the courtroom, to retire once again and in that way actually obstructed the administration of justice. Hence, since its requisites have been met, the exercise of the summary contempt power under Sec. 401 and Rule 42(a) was not an abuse of the district court's discretion.
 
 CONCLUSION
 
 27
 The order appealed from is reversed insofar as it imposed a $250 fine based on appellant's attempt to have the surveillance report admitted in evidence. The balance of the order, adjudicating appellant in contempt and imposing a $500 fine for a deliberate and defiant comment in open court in the presence of several members of the jury, is affirmed.
 
 
 
 *
 Honorable Milton Pollack, United States Senior District Judge, Southern District of New York, sitting by designation