**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 93-4319
_____


UNITED STATES OF AMERICA,

Plaintiff,

versus

BRUCE R. WEST, SR.,

Defendant.

*********************************************************

MICHAEL S. FAWER,

Appellant.


_____

Appeal from the United States District Court
For the Eastern District of Texas
_____
(May 12, 1994)

Before WISDOM, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Michael Fawer appeals his conviction and sentence for criminal contempt of court in violation of 18 U.S.C. § 401 (1988). Because Fawer's cited conduct was not contemptuous))i.e., Fawer did not disobey a specific court order or in any way obstruct or imminently threaten the administration of justice))we reverse.

Fawer represented Bruce West, Sr., who was prosecuted on charges of fraud and conspiracy to commit fraud. During trial, the district court summarily punished Fawer for criminal contempt of court pursuant to Fed. R. Crim. P 42(a), citing Fawer's continued

argument, disobedience of the court's orders, and disrespectful behavior. The court initially sentenced Fawer to pay a $200.00 fine, but later changed the sentence to a twelve-hour jail term. Fawer contends on appeal that the evidence was insufficient to support his criminal contempt conviction.

The statute under which Fawer was convicted of criminal contempt allows a district court to "punish by fine or imprisonment, at its discretion, such contempt of its authority . . . as [m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401 (1988); *see also Eaton v. City of Tulsa,* 415 U.S. 697, 698, 94 S. Ct. 1228, 1229, 39 L. Ed. 2d 693 (1974) (holding that the conduct underlying a criminal contempt conviction "must constitute an imminent, not merely likely, threat to the administration of justice"). The disobedience of a specific court order can also result in a criminal contempt conviction. *See* 18 U.S.C. § 401(3); *see e.g., In re Boyden,* 675 F.2d 643, 644 (5th Cir. 1982). "[F]or a criminal contempt conviction to stand, the evidence [viewed in the light most favorable to the government] must show `both a contemptuous act and a willful, contumacious, or reckless state of mind.'" *United States v. McCargo,* 783 F.2d 507, 510 (5th Cir. 1986) (quoting *United States v. Hilburn,* 625 F.2d 1177, 1180 (5th Cir. 1980)).

"A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the

court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record." Fed. R. Crim. P. 42(a). "The procedures for summary disposition of contempt charges are reserved for `exceptional circumstances, . . . such as acts threatening the judge or disrupting a hearing or obstructing court proceedings.'" *United States v. Onu,* 730 F.2d 253, 255 (5th Cir.) (quoting *Harris v. United States,* 382 U.S. 162, 164, 86 S. Ct. 352, 354, 15 L. Ed. 2d 240 (1965)), *cert. denied,* 469 U.S. 856, 105 S. Ct. 182, 83 L. Ed. 2d 116 (1984). Because Fawer does not contend that the district court abused its discretion by invoking the summary procedures of Rule 42(a), as opposed to the notice and hearing procedures set forth in Fed. R. Crim. P. 42(b), we do not address whether an abuse of discretion occurred. Instead, our discussion is limited to deciding whether the evidence was sufficient to support Fawer's criminal contempt conviction.

In its certificate of contempt, the district court stated that its "finding of contempt and sentence relate specifically to the conduct of Mr. Fawer disclosed by Exhibit `A.'" Exhibit A is an unofficial transcript of that portion of the trial proceedings immediately preceding the court's summary contempt order.[1] The district court further stated that "Fawer was found in contempt for his continued argument and for his failure to obey the Orders of this Court," conduct which "constituted intentional, actual and material obstruction of the judicial proceedings then in session and total disrepect [sic] for this Court."

---

[1] *See* Appendix.

After reviewing the conduct cited by the district court as supporting its criminal contempt order, we cannot find any instances where Fawer willfully disobeyed a court order. Prior to sentencing Fawer to a twelve-hour jail term, the district court instructed Fawer not to exceed the scope of direct examination when he conducted his cross-examination of witness Jack Franks. The government concedes that Fawer did not disobey this order since Fawer's "questions were not outside the scope of direct examination."

Fawer was also ordered to pay a $200.00 fine by 5 p.m. the next day. The government argues that Fawer's stated refusal to pay the court-ordered fine amounted to the willful disobedience of a specific court order, thus providing sufficient evidence to support Fawer's conviction for contempt. We disagree. As the record shows, Fawer stated his intention of not paying the fine))"Your Honor, I will not [pay the fine]"))which at most could be characterized as an insolent or defiant remark. Fawer could not have disobeyed the court's order unless he actually failed to pay the fine by 5 p.m. the next day.[2] Consequently, Fawer's stated intention of not paying the fine could not itself amount to the disobedience of the court's order. The government's reliance upon *United States v. Giovanelli,* 897 F.2d 1227, (2d Cir.), *cert. denied,* 498 U.S. 822, 111 S. Ct. 72, 112 L. Ed. 2d 46 (1990), is misplaced. In *Giovanelli,* counsel also stated his intention of not

---

[2] Whether Fawer ever paid the fine is not disclosed by Exhibit A, the sole basis for the court's finding of contempt. We therefore need not concern ourselves with this question.

paying a court-ordered fine))"I won't pay.  You can put me in jail, Judge."  *Id.,* 897 F.2d at 1230.  In affirming the district court's finding of contempt, the Second Circuit characterized counsel's misbehavior as an insolent remark, rather than a failure to obey a court order.  *See id.* at 1232.

The government also contends that Fawer's exchanges with the district court concerning (1) the court's order to confine cross-examination to the scope of direct examination, and (2) the court's contempt citation, amounted to the intentional disobedience of the court's prior order not to "argue with me when I rule."  We think it clear that this standing order was not sufficiently definite or specific to support a contempt citation.  *See Whitfield v. Pennington,* 832 F.2d 909, 913 (5th Cir. 1987) ("A party may be held in contempt if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order."), *cert. denied,* 487 U.S. 1205, 108 S. Ct. 2846, 101 L. Ed. 2d 883 (1988); *see also In re Holloway,* 995 F.2d 1080, 1097 (D.C. Cir. 1993) (Mikva, J., dissenting) ("[T]rial attorneys are ethically obligated to argue with the court, to challenge its actions, and to attempt to change its mind."), *petition for cert. filed,* 62 U.S.L.W. 3430 (Dec. 1993).[3]

---

[3]     Moreover, even were we to assume that the court's prior order was reasonably specific, we would not be able to conclude from the record that Fawer acted willfully or contumaciously in disobeying that order.

We further cannot find a single instance in Fawer's cited conduct where Fawer's colloquies with the district court obstructed or imminently threatened the administration of justice. Although Fawer challenged the authority of the district court by stating his intention of not paying the $200.00 fine, Fawer did so *outside* the presence of the jury. The government has not shown how Fawer's conduct, confined to this set of facts, obstructed or imminently threatened the administration of justice. *Compare Giovanelli,* 897 F.2d at 1232 (holding that a court may properly hold counsel in contempt of court for challenging its authority in the jury's presence, particularly where counsel's misbehavior required the jury, which had just returned to the courtroom, to retire again). While Fawer's stated refusal to pay the fine should neither be condoned nor encouraged, it does not cross the line between a disrespectful remark and one that should be punished as contemptuous for obstructing the administration of justice. We therefore hold that Fawer's cited conduct was insufficient to support his conviction for criminal contempt of court.[4]

---

[4] The government also argues that Fawer's cited conduct amounted to contemptuous behavior when placed in the context of Fawer's other conduct not described in Exhibit A. When reviewing a sufficiency claim, our review of the record is limited to the conduct the trial court specifically relied upon in finding the defendant guilty of criminal contempt. *See Eaton,* 415 U.S. 697, 698-99, 94 S. Ct. 1228, 1230, 39 L. Ed. 2d 693 (1974) ("[T]he question is not upon what evidence the trial judge *could* find petitioner guilty but upon what evidence the trial judge *did* find petitioner guilty."). While we recognize that uncited closely related conduct can be used to determine if the cited conduct is willful or contumacious, we note that the government in this case is attempting to use uncited conduct in a different fashion))i.e., to show that the cited conduct was contemptuous. This the government cannot do.

For the foregoing reasons, we REVERSE.

APPENDIX

The portion of the trial proceedings reflected by Exhibit A provides the following:

BY MR. FAWER:

Q.  Did I understand correctly there was some transaction involving property with Mr. Gann?

A.  Well, I understood your question to be only which occurred first of the two transactions, Bermuda Dunes and/or Skypoint?

Q.  No, I'm including the others as well.  I'm trying to -- I want to get a chronology and then ask you about them.

A.  Go ahead.

Mr. FRANK:  Your Honor, I would object under 403 at Mr. Fawer's tone of voice.  I think it's demeaning and its prejudicial.

Mr. FAWER:  Your Honor, I would take objection to that.

THE COURT:  Well, confine your question to transactions that were referred to in direct examination.

MR. FAWER:  That's not his objection.  He said I said something demeaning.

THE COURT:  I'm telling you, I'm telling you to confine your questioning of this witness --

MR. FAWER:  I am, Your Honor.  That's precisely what I'm asking about.

THE COURT:  You asked him about transactions, plural.

MR. FAWER:  No, I didn't.  I asked about the Gann transaction, Your Honor.

THE COURT:  Come to the bench.

    (Side bar discussion was had between the Court and counsel out to the hearing of the jury as follows:)

THE COURT:  I am going to take a 15-minute recess, and I'll ask the court reporter to see if he can find that last question asked by Mr. Fawer while we're in recess.

-8-

Can you do that?

THE COURT REPORTER:  Yes.

THE COURT:  All right.

(The following occurred in the presence and hearing of the jury as follows:)

THE COURT:  Ladies and gentlemen of the jury, at this time we are going to take a recess for 15 minutes.  I remind you to keep in mind all of the instructions I have previously given you, and you may now pass to the jury room.

(Jury left the courtroom at 4:29 p.m.)

THE COURT:  Court will be in recess for 15 minutes. (Recess from 4:29 p.m. to 4:47 p.m.)

AFTER RECESS

THE COURT:  Be seated.

Before we bring the jury in, Mr. Fawer, I understand that you attempted to engage the court reporter in an argument.

MR. FAWER:  That's inaccurate.  I deny it.

THE COURT:  Anyway --

MR. FAWER:  No, wait, it's not "anyway."

THE COURT:  I'm just telling you --

MR. FAWER:  You heard that, and it's inaccurate.

THE COURT:  Sit down.

MR. FAWER:  Your Honor is denying me --

THE COURT:  Sit down.

MR. FAWER:  -- the right to defend myself.

THE COURT:  Would you bring John Moore down here.  Is he -- I want him present.

I am telling you, whether you did or you didn't, do not. The court reporter is here to do one thing, and he is not here to take abuse or be engaged in arguments by counsel.

-9-

Now, just before we recessed, I instructed you to confine your interrogation of the witness to transactions that were inquired about on direct examination. You said you were. I said you asked him about transactions, plural. You argued with me, as you have been prone to do, and told me that you did not. You disputed what --

MR. FAWER: And I --

THE COURT: -- I said.

MR. FAWER: And I still do.

THE COURT: I am going to -- I have listened to the tape. I am satisfied with what is on the tape.

I hereby fine you $200, which you will pay by check by not later than 5:00 tomorrow afternoon to the clerk.

MR. FAWER: Your Honor, I will not.

I listened to the tape. The court reporter listened, played it, and called me over. I asked on the tape and it is a part of the record that I asked about the two other Gann transactions which were the very subject matter of the direct. I was precisely within the confines of the direct.

And as I walked away, the court reporter said: Come back. It's not -- there's more. That was the sum and substance of it.

I have not violated your order and when I do violate it, I have no problem being castigated or fined. But I did not. The record will speak for itself.

THE COURT: All right, then, I hereby sentence you to 12 hours in jail to be served at the conclusion of this trial.

And you may bring the jury in.

And the next time you argue with me about a ruling I have made, I will have another one for you.

MR. FAWER: May I be heard?

THE COURT: No, sir.

MR. SIMPSON: I forgot where we are. What's next, Your Honor?

THE COURT: Well, we're waiting on the jury.

MR. SIMPSON:  Well, we're still on cross?  All right, I'm sorry.

Your Honor, before the jury comes in, I would -- the presence of the other marshals in the courtroom, I think, may cause the jury to speculate that it's because of either -- because of my client, and I don't want them to speculate that my client is some sort of a threat or anything like that.  And I don't know what the Court can do in terms of a cautionary instruction that's going to make things better, but I would like to ask --

THE COURT:  I think a lot of it depends on the conduct of Mr. Fawer throughout the remainder of this trail, but I am going to have sufficient personnel in this courtroom to maintain order and enforce the orders of the Court.

MR. FAWER:  I take strenuous objection to their presence, as well.

Your Honor has not been threatened.  Nobody has been threatened.  The last time I looked, I have been the only one who has been threatened here.

THE COURT:  The matter is closed.

MR. FAWER:  It may be closed, Your Honor, but I --

THE COURT:  It's closed.

MR. FAWER:  May I be heard about --

THE COURT:  No, sir.

MR. FAWER:  -- the subject?

THE COURT:  No, sir.

MR. FAWER:  May the record --

THE COURT:  You are ordered to sit down.

MARSHAL MOORE:  Take your seat, sir, now.

THE COURT:  And bring the jury in.

(Jury entered the courtroom at 5:00 p.m.)

THE COURT:  You may be seated, ladies and gentlemen of the jury, and Mr. Fawer, you may continue your cross examination.

Record on Appeal vol. 10, at 930-36.

*United States v. Fawer*, No. 93-4319

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting:


> Men at some time are masters of their fates:
> The fault, dear Brutus, is not in our stars,
> But in ourselves....

William Shakespeare, *Julius Caesar*, act 1, sc. 2, 1.134 (1599).

> We have met the enemy and he is us.

Walt Kelly, *Pogo* (ca. 1950).

Certainly, courts are masters, in large part, of their fate. In this instance, however, we appear to be working, without legal justification, against ourselves. The judicial process at trial must not be obstructed; the trial judge must ensure that it is not. Accordingly, much discretion is vested in the judge. The reasons are obvious; they are illumined by increasing lawyer incivility and lack of professionalism. Such obstruction cannot be tolerated. And, when it becomes contemptuous, it must be handled swiftly. To my lights, that is precisely what happened here.

Not much need be said. The majority notes that "[t]he disobedience of a specific court order can ... result in a criminal contempt conviction." Maj. Op. at 2. The district judge stated that Fawer was found in contempt for, *inter alia*, "his failure to obey the Orders of this Court...." Only one instance need be cited; Fawer's stated refusal to pay a $200 fine by 5:00 p.m. the next day.

Unfortunately, the majority allows Fawer an out, concluding that he merely "stated his intention of not paying the fine" and "could not have disobeyed the court's order unless he actually

failed to pay the fine by 5 p.m. the next day."  Maj. Op. at 4.  It is a sad day indeed if this is the way we are going to shackle a district judge in ensuring that lawyers at trial do not obstruct the administration of justice.  I was not aware that courts were required to allow lawyers time to think about whether they were going to obey a court order.  Moreover, I understood that lawyers were always taken at their word; when Fawer stated that he would not pay the fine, that put an end to it.  He "crossed the Rubicon".  That was his choice.  And, for that choice, among his other actions, he was properly held in contempt.

Accordingly, I respectfully dissent.