**H.E. Elya A. PEKER, ABI Ambassador, Plaintiff,**

**v.**

**Reid A. FADER, and Galaxy of Graphics, Ltd., Defendants.**

**No. 96 Civ. 3564 (JGK).**

United States District Court, S.D. New York.

May 5, 1997.

Opinion Denying Reargument
May 27, 1997.

H.E. Elya A. Peker, Brooklyn, NY, pro se.

Adriana E. Kierszenbaum, Kenneth R. Schachter, Silverberg Stonehill & Goldsmith, P.C., New York City, for Defendants.

## OPINION AND ORDER

KOELTL, District Judge:

This is a copyright infringement action by *pro se* plaintiff H.E. Elya A. Peker against defendants Reid A. Fader and Galaxy of Graphics Ltd. By Memorandum dated April 14, 1997, Magistrate Judge Andrew J. Peck certified facts pursuant to 28 U.S.C. § 636(e) demonstrating the contempt of Mr. Peker and his wife, Ms. Peker, before the Magistrate Judge at the March 26, 1997 Final Pretrial Conference, and recommended dismissal of the case as the appropriate sanction. For the reasons explained below, Mr. and Ms. Peker are adjudged in contempt of court, and the case is dismissed with prejudice.

## I.

The record in this case establishes the following facts. On August 26, 1996, this Court assigned this action to Magistrate Judge Peck for all pretrial matters. On October 7, 1996, Magistrate Judge Peck direct- ed Mr. Peker to pay costs of $270.00 to the defendants for Mr. Peker's failure to appear at the conference on that date. In an order dated November 4, 1996, the Court affirmed this ruling. On November 19, 1996, Magistrate Judge Peck again directed Mr. Peker to pay costs of $290.00 to the defendants for Mr. Peker's failure to appear for his deposition and $395.00 for his non-appearance at the conference on that date. The Magistrate Judge also imposed a sanction of $250 payable to the Clerk of the Court. In an order dated December 19, 1996, the Court affirmed the imposition of compensatory sanctions for the defendants' expenses but vacated and remanded without prejudice the order awarding the sanction of $250 payable to the Clerk of the Court.

On March 21, 1997, the Court denied the defendants' motion to dismiss the action pursuant to Fed.R.Civ.P. 41(b). The basis for the motion was that Mr. Peker had failed to comply with orders of the Court to pay monetary sanctions to the defendants. The Court found that although Mr. Peker had failed to pay the costs, the sanctions had had the appropriate effect of accomplishing compliance in that Mr. Peker did eventually appear at conferences and at his deposition. The Court concluded that dismissal at that point in the case would be too drastic a sanction considering the time, money, and effort the parties had expended in the litigation. The Court reminded Mr. Peker, however, that the failure to comply with Court orders might lead to dismissal of this action in which event Mr. Peker would have no trial.

On March 26, 1997, the Magistrate Judge held a final pretrial conference. Early in the conference, the Magistrate Judge warned Ms. Peker that she was not to speak, or if she did, she would be cited for contempt.[1]

---

1. At a previous conference, the Magistrate Judge advised Ms. Peker that because she is not a party nor an attorney in this action, she was not allowed to speak at conferences. In a February 27, 1997 order, in response to an "Objection" dated February 4, 1997, in which Mr. Peker sought to have Ms. Peker represent him, this Court explained:

   The plaintiff again seeks to have his wife represent him. The plaintiff is appearing in this action *pro se*. It is well settled that only per- sons admitted to practice law may represent parties before the Court. *See Catalano v. Shell Oil Co.*, 94 Civ. 4288(CHS), 1996 WL 715534, 1996 Lexis 18447 (S.D.N.Y.1996). The plaintiff's wife is not authorized to practice law and thus she is not authorized to represent him in court. However, the plaintiff is appearing *pro se* and the bar to the plaintiff's representation by his wife does not prevent her from offering all assistance to him in this non-jury case. In his objection, the plaintiff explains that he is

(Tr. of 3/26/97 Conference at 7.) After reviewing Mr. Peker's objections to the defendants' portion of the proposed pretrial order, defense counsel requested a break to copy the Court's copy of Mr. Peker's proposed pretrial order because defense counsel had misplaced his copy and Mr. Peker did not have a copy with him. At that point, the following colloquy took place:

> MR. SCHACTER: Your Honor, could we take a 15 minute break and I could have that, we have a copy that I—
>
> MS. PEKER: I also don't have a copy.
>
> MR. SCHACTER: I'll photocopy one for them, also.
>
> THE COURT: Off the record.
>
> (Off the record)
>
> THE COURT: On the record. Mrs. Peker—
>
> MS. PEKER:—Enlarge the complaint. Because the court is against artist, against us, that's it.
>
> THE COURT: Mrs. Peker, you are hereby cited for contempt.
>
> MS. PEKER: Good. That's okay.
>
> MR. PEKER: It's okay. We can pay with food stamps.
>
> MS. PEKER: Okay. We can pay with food stamps. On the record we can pay with food stamps your court, your sanctions. Let's go.
>
> THE COURT: If you walk out now I will recommend to Judge Koeltl dismissal of your case.
>
> MR. PEKER: Yeah, okay, you recommended even another more worse.
>
> THE COURT: All right. The record will reflect—
>
> MS. PEKER: My child does not have what to eat and you don't want—
>
> MR. PEKER: To eat! To eat!

> MS. PEKER: And you do not let us, let us enlarge the complaint.
>
> MR. PEKER: Everything—stole the publisher, bandit rich, rich, of this. That's the—
>
> MS. PEKER: Let Judge Koeltl decide. Let Judge Koeltl decide!
>
> MR. PEKER: Let Judge Koeltl decision.
>
> THE COURT: On the record, I'm not sure whether the court reporter was able to get any of that. The record will reflect that Mr. and Mrs. Peker stormed out of the courtroom screaming and showing obvious contempt for this court which is on a par with what they have shown throughout the entire case. They have not completed the pretrial order conference.

Accordingly, pursuant to the Court's inherent powers, as well as the Court's contempt powers, I hereby recommended that Judge Koeltl hold the Pekers, both Mr. and Mrs. Peker, in contempt; that the case be dismissed as a consequence of their contempt, their failure to comply with court orders, and their storming out of the final pretrial conference.

In addition, I recommend to Judge Koeltl that if he deems it appropriate, he enter an order precluding the Pekers from bringing any further actions for copyright infringement against Mr. Fader, Galaxy of Graphics or related companies, because this is the second time, assuming Judge Koeltl follows my recommendation, that a case of theirs has been dismissed because of their inability to comply with the court process....

(Tr. of 3/26/97 Conference at 16–18.)

The Court has reviewed the transcript of the March 26 conference and has also listened to the audiotape of the conference. The audiotape of the conference shows that Mr. and Ms. Peker were in fact screaming at

---

not fluent enough in English to represent himself without the assistance of his wife, and indeed the Magistrate Judge has afforded the plaintiff some leeway in the hearings before him. In this case, in his objection the plaintiff says that the assistance of his wife "means only that his wife be allowed to sit at all times by his side and whisper and/or write notes for him off the record." (Objection at 6) This

technical assistance would be permitted so long as the plaintiff and his spouse are not disruptive. In this connection, it should be noted that the disruptive tactics before the Magistrate Judge led the Magistrate Judge to warn the plaintiff and his spouse that their conduct could subject them to contempt sanctions. That is equally true of such conduct before the Court.

the Magistrate Judge before they stormed out of the conference.

This Court held a hearing on April 25, 1997, after notice to all parties, on why Mr. and Ms. Peker should not be held in contempt in accordance with Magistrate Judge Peck's April 14, 1997 Certification. Mr. and Ms. Peker were afforded the opportunity to introduce any evidence at the hearing or in writing. They chose to make two written submissions to the Court in which they argued that they were not in contempt and had not screamed at the Magistrate Judge.

## II.

"Federal courts have the power summarily to punish as contempt 'misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice.'" *United States v. Martin–Trigona*, 759 F.2d 1017, 1024 (2d Cir.1985) (quoting *Ex Parte Terry*, 128 U.S. 289, 304, 9 S.Ct. 77, 79, 32 L.Ed. 405 (1888)). Pursuant to 18 U.S.C. § 401, a court has the "power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice...." 18 U.S.C. § 401(1); *see also Martin–Trigona*, 759 F.2d at 1024 ("[The power to punish as contempt] is limited to circumstances 'where the misbehavior is in the presence of the judge and is known to him, and where immediate corrective steps are needed to restore order and maintain the dignity and authority of the court.'") (quoting *Johnson v. Mississippi*, 403 U.S. 212, 214, 91 S.Ct. 1778, 1779, 29 L.Ed.2d 423 (1971)). "Although the contempt power should not be used in a manner that impinges on legitimate advocacy, a judge need not tolerate disrespect or a deliberate show of defiance in open court. To affront the dignity of the court the misbehavior need not insult the judge personally, but may consist of threats, disrespect or other like behavior." *United States v. Giovanelli*, 897 F.2d 1227, 1232 (2d Cir.), *cert. denied sub nom. Hochheiser v. United States*, 498 U.S. 822, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990).

Pursuant to 28 U.S.C. § 636(e), a magistrate judge has the power to certify facts to the district court constituting a contempt including "misbehavior at a hearing or other proceeding" or "any other act or conduct which if committed before a judge of the district court would constitute contempt of such court." The district court, following a hearing such as that afforded to Mr. and Ms. Peker in this case, shall, if the evidence so warrants, punish the contemnor in the same manner and to the same extent as for a contempt committed before a district court judge.

In this case, the evidence establishes beyond a reasonable doubt that Mr. and Mrs. Peker not only screamed at the Magistrate Judge, but that they also stormed out of the Final Pretrial Conference before it had concluded despite being warned that if they did so, the Magistrate Judge would recommend dismissal of the action as a contempt sanction. Mr. and Ms. Peker had also been warned in the past that disruptive conduct could lead to contempt sanctions including the dismissal of this case in which event there would be no trial. Both the transcript and the audio tape of the proceeding clearly indicate that Mr. and Ms. Peker's "insulting remarks, scornful tone of voice, and disrespect had become 'a flagrant defiance of the person and presence of the judge before the public.'" *Martin–Trigona*, 759 F.2d at 1026 (quoting *United States v. Marra*, 482 F.2d 1196, 1201 (2d Cir.1973) (quoting *Cooke v. United States*, 267 U.S. 517, 536, 45 S.Ct. 390, 394–95, 69 L.Ed. 767 (1925))). Although courts must be particularly solicitous of *pro se* litigants, there is no excuse for any litigant screaming at a judge, insulting the court, ridiculing any proposed sanction, and storming out of the courtroom during the middle of a conference after being warned of the consequences. Accordingly, Mr. and Ms. Peker are adjudged in contempt of court for their actions at the Final Pretrial Conference on March 26, 1997. *See, e.g., Giovanelli*, 897 F.2d at 1232; *United States v. Ruggiero*, 835 F.2d 443, 446 (2d Cir.1987); *Martin–Trigona*, 759 F.2d at 1025–26; *In re Williams*, 500 F.2d 403, 405 (2d Cir.1974), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 803 (1975).

Ordinarily, the sanction for contempt is a fine or imprisonment. *See, e.g., Giovanelli,* 897 F.2d at 1232; *Williams,* 500 F.2d at 405. However, in this case, a specific fine would likely be meaningless. As explained above, the Magistrate Judge previously sanctioned Mr. Peker pursuant to Fed. R.Civ.P. 37 for failure to appear at conferences and a deposition, but Mr. Peker has refused to pay. Furthermore, imprisonment is inappropriate in light of Mr. and Ms. Peker's age. Dismissal of this action is therefore the most appropriate contempt sanction. As the Magistrate Judge noted, "Certainly, if the Court can dismiss under Rule 37 of the Federal Rules of Civil Procedure for disobedience of discovery and scheduling orders in appropriate cases, the Court should be able to dismiss as a contempt sanction where, as here, no other sanction seems appropriate for the contempt." (Certification of Facts for Contempt Pursuant to 28 U.S.C. § 636(e) at 7.)

Accordingly, this action is dismissed with prejudice.

## CONCLUSION

For the reasons explained above, Mr. and Mrs. Peker are adjudged in contempt, and this action is **dismissed** with prejudice. The Clerk is directed to enter Judgment dismissing the action and closing the case.

**SO ORDERED.**

### CERTIFICATION OF FACTS FOR CONTEMPT PURSUANT TO 28 U.S.C. § 636(e)

PECK, United States Magistrate Judge:

**To the Honorable John G. Koeltl, United States District Judge:**

In response to Judge Koeltl's April 3, 1997 Order, this will constitute written certification of the facts of the contempt of plaintiff Elya Peker, and his wife Mrs. Peker, before the Court at the March 26, 1997 Final Pretrial Conference. Pursuant to 28 U.S.C. § 636(e), Mr. and Mrs. Peker are ordered to appear before Judge Koeltl, at a date and time to be set by Judge Koeltl's chambers, to show cause why they should not be adjudged in contempt by reason of the facts certified herein.

28 U.S.C. § 636(e) provides:

In a proceeding before a magistrate, any of the following acts or conduct shall constitute a contempt of the district court for the district wherein the magistrate is sitting: (1) disobedience or resistance to any lawful order, process, or writ; (2) misbehavior at a hearing or other proceeding, or so near the place thereof as to obstruct the same; (3) failure to produce, after having been ordered to do so, any pertinent document; (4) refusal to appear after having been subpoenaed or, upon appearing, refusal to take the oath or affirmation as a witness, or, having taken the oath or affirmation, refusal to be examined according to law; or (5) any other act or conduct which if committed before a judge of the district court would constitute contempt of such court. Upon the commission of any such act or conduct, the magistrate shall forthwith certify the facts to a judge of the district court and may serve or cause to be served upon any person whose behavior is brought into question under this section an order requiring such person to appear before a judge of that court upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified. A judge of the district court shall thereupon, in a summary manner, hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a judge of the court, or commit such person upon the conditions applicable in the case of defiance of the process of the district court or misconduct in the presence of a judge of that court.

Judge Koeltl is intimately familiar with the conduct of plaintiff Peker and his wife at prior conferences before both Judge Koeltl and myself. Mrs. Peker's inappropriate conduct at prior conferences caused me to order that she not speak at any conferences. That order was affirmed by Judge Koeltl.

At the March 26, 1997 final pretrial conference, I again warned Mrs. Peker early in the

conference that she was not to speak, or if she did, she would be cited for contempt. (3/26/97 Tr. at 7.)[1] After reviewing plaintiff's objections to defendants' portion of the proposed pretrial order, defense counsel requested a break to copy the Court's copy of plaintiff's proposed pretrial order, because defense counsel had misplaced his copy, and plaintiff did not have a copy with him either. The Court gave defense counsel the Court's copy to begin photocopying it. (*See* 3/26/97 Tr. at 15–17.) At that point, Mr. and Mrs. Peker began to pack up and leave the courtroom. Mrs. Peker shouted that they were leaving "[b]ecause the country's against us, against us, that's it." I responded that she was cited for contempt. The transcript reads as follows:

> MR. SCHACTER: Your Honor, could we take a 15 minute break and I could have that, we have a copy that I—
>
> MS. PEKER: I also don't have a copy.
>
> MR. SCHACTER: I'll photocopy one for them, also.
>
> THE COURT: Off the record.
>
> (Off the record)
>
> THE COURT: On the record. Mrs. Peker—
>
> MS. PEKER: . . . Enlarge the complaint. Because the Court is against artists, against us, that's it.
>
> THE COURT: Mrs. Peker, you are hereby cited for contempt.
>
> MS. PEKER: Good. That's okay.
>
> MR. PEKER: It's okay. We can pay with food stamps.
>
> MS. PEKER: Okay. We can pay with food stamps. On the record we can pay with food stamps your court, your sanctions. Let's go.
>
> THE COURT: If you walk out now I will recommend to Judge Koeltl dismissal of your case.
>
> MR. PEKER: Year, okay, you recommend even another more worse.
>
> THE COURT: All right. The record will reflect—

> MS. PEKER: My child does not have what to eat, and you don't want—
>
> MR. PEKER: To eat! To eat!
>
> MS. PEKER: And you do not let us enlarge the complaint.
>
> MR. PEKER: Everything—stole the publisher, bandit rich, rich, of this. That's the—
>
> MS. PEKER: Let Judge Koeltl decide. Let Judge Koeltl decide!
>
> MR. PEKER: Let Judge Koeltl decision.
>
> [At this point the Pekers left the courtroom]
>
> THE COURT: On the record, I'm not sure whether the court reporter was able to get any of that. The record will reflect that Mr. and Mrs. Peker stormed out of the courtroom screaming and showing obvious contempt for this court which is on a par with what they have shown throughout the entire case. They have not completed the pretrial order conference.
>
> Accordingly, pursuant to the Court's inherent powers, as well as the Court's contempt powers, I hereby recommended that Judge Koeltl hold the Pekers, both Mr. and Mrs. Peker, in contempt; that the case be dismissed as a consequence of their contempt, their failure to comply with court orders, and their storming out of the final pretrial conference.

(3/26/97 Tr. at 16–18.) The transcript reads mildly in comparison to what actually went on in the courtroom, for several reasons: first, the Pekers were so out of control that the court reporter was not able to understand and transcribe everything they said. Second, they were not talking but screaming. Their conduct was sufficiently "out of control" that, for the only time in the two years I have been on the Bench, I hit the emergency security button to call for the court security officers. There is an audiotape of the conference, and Judge Koeltl can listen to that if he believes it necessary.

The Pekers should be held in contempt for two reasons: first, their screaming at the

---

**1.** The Pekers on April 9, 1997 submitted a proposed "corrected" transcript, corrected based on their listening to the audiotape of the conference. For present purposes, the Court utilizes the Pekers' "corrected" transcript herein.

Court at the March 26, 1997 conference, and second, their storming out of that conference before it had concluded, despite being warned that if they did so I would recommend dismissal of the action as a contempt sanction. (*See* 3/26/97 Tr. at 17.)

"Federal courts have the power summarily to punish as contempt 'misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice.' " *United States v. Martin–Trigona,* 759 F.2d 1017, 1024 (2d Cir.1985). The power to summarily impose the punishment of contempt has been codified in 18 U.S.C. § 401(1). *See, e.g., United States v. Giovanelli,* 897 F.2d 1227, 1230 (2d Cir.1990). Contempt is "limited to circumstances 'where the misbehavior is in the presence of the judge and is known to him, and where immediate corrective steps are needed to restore order and maintain the dignity and authority of the court.' " *United States v. Martin–Trigona,* 759 F.2d at 1024.

It is clear that in this case a punishment of contempt is both necessary and appropriate. The Pekers' insolent behavior occurred not only "in the presence" of this Magistrate Judge, but in spite of direct court orders. The Pekers' actions were such as to jeopardize the "dignity and authority of the court." Yelling during and walking out of the conference in blatant disregard of a judge's orders cannot be taken lightly. Little respect for the legal system would be left if actions such as these were not punished swiftly and harshly. The Second Circuit has not hesitated to uphold even criminal contempt punishment in similar situations. *See, e.g., United States v. Giovanelli,* 897 F.2d 1227, 1230, 1232 (2d Cir.1990) (contempt and fine for comment "I won't pay. You can put me in jail, Judge."; 2d Circuit holds that "a judge need not tolerate disrespect or a deliberate show of defiance in open court"); *United States v. Ruggiero,* 835 F.2d 443 (2d Cir. 1987) (contempt and fine for inappropriate verbal outburst despite court order to be silent); *United States v. Martin–Trigona,* 759 F.2d 1017 (2d Cir.1985) (contempt and imprisonment where party made "insulting remarks [in a] scornful tone of voice," made disparaging comments about court, and implied the existence of a Jewish conspiracy);

*In re Evelyn Williams,* 500 F.2d 403, 404–05 (2d Cir.1974) (contempt and imprisonment for leaving courtroom in defiance of judge's direction to remain); *United States v. Galante,* 298 F.2d 72, 74–75 (2d Cir.1962) (contempt and imprisonment for refusal to be silent); *United States v. Occhipinti,* 91 CR. 0168, 1991 WL 251655 at *1, *3 (S.D.N.Y. Nov.18, 1991) (contempt and fine for refusing to obey a direct court order).

A word about the appropriate sanction if Judge Koeltl finds the Pekers (particularly Mr. Peker) in contempt. The usual sanction for contempt is imprisonment or a fine. *See* cases cited immediately above. As Judge Koeltl is aware, I previously sanctioned Mr. Peker pursuant to Rule 37, and required him pay defense counsel's expenses (including attorneys' fees) for hearings and depositions at which Mr. Peker failed to appear. The Pekers have refused to pay—perhaps because they are indigent as they claim, perhaps merely because they are recalcitrant—and Judge Koeltl denied defendants' motion to dismiss for failure to pay the sanctions. Thus, monetary contempt sanctions for the Pekers' conduct at the March 26, 1997 conference likely would be meaningless. Imprisonment, however, seems ill-advised in light of the Pekers' age. I respectfully submit that dismissal of their complaint is the most appropriate contempt sanction. Certainly, if the Court can dismiss under Rule 37 of the Federal Rules of Civil Procedure for disobedience of discovery and scheduling orders in appropriate cases, the Court should be able to dismiss as a contempt sanction where, as here, no other sanction seems appropriate for the contempt. Nor is this a harsh sanction in this case. From my review of the parties' pretrial order, and from the Pekers' conduct at numerous court conferences, whatever the merits of the claim actually may be, Mr. Peker will not likely be able to prove his case at trial.

While pro se litigants need to be (and are) treated liberally by the Court because of their unfamiliarity with the law and court procedures, there is no excuse for any litigant screaming at a judge and storming out in the midst of a conference, even after being warned of the consequences. The Pekers

should be held in contempt, the sanction for which should be dismissal of Mr. Peker's case.

April 14, 1997.

### *OPINION AND ORDER ON REARGUMENT*

KOELTL, District Judge:

In an Opinion and Order dated May 5, 1997, this Court adjudged the plaintiff, Mr. Peker, and his wife, Mrs. Peker, in contempt and dismissed this action with prejudice. The plaintiff now moves for reconsideration of the Opinion and Order pursuant to Local Rule 3(j).

■ A motion for reargument pursuant to Local Rule 3(j) requires the moving party to demonstrate that the Court overlooked the controlling decisions or factual matters that were put before the Court in the underlying motion. *See Walsh v. McGee*, 918 F.Supp. 107, 110 (S.D.N.Y. 1996); *see also* Local Rule 3(j); *In re Houbigant*, 914 F.Supp. 997, 1001 (S.D.N.Y. 1996); *Bank Leumi Trust Co. of New York v. Istim, Inc.*, 902 F.Supp. 46, 48 (S.D.N.Y.1995). Local Rule 3(j) is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Walsh*, 918 F.Supp. at 110; *see also United States v. Mason Tenders Dist. Council of Greater New York*, 909 F.Supp. 882, 889 (S.D.N.Y. 1995). The Court must not allow reargument to be a substitute for appealing a final judgment or to permit a party to reargue those issues already considered merely because a party does not like the outcome. *See Houbigant*, 914 F.Supp. at 1001; *Mason Tenders*, 909 F.Supp. at 889.

In this case, the plaintiff has not demonstrated that the Court overlooked either controlling decisions or factual matters that were put before the Court in Magistrate Judge Peck's Memorandum, which certified facts pursuant to 28 U.S.C. § 636(e) demonstrating the contempt of Mr. and Ms. Peker and recommended dismissal of the case as the appropriate sanction, in the transcript and audiotape of the relevant conference, in the hearing held by this Court on April 25, 1997, and in the two written submissions by the plaintiff. Instead, the plaintiff simply disagrees with the conclusions reached by the Court. The motion for reconsideration is therefore without merit.

Accordingly, for the reasons stated above, the plaintiff's motion for reargument is **denied.**

**SO ORDERED.**