EATON *v.* CITY OF TULSA

No. 73–5925. Decided March 25, 1974

PER CURIAM.

In answering a question on cross-examination at his trial, in the Municipal Court of Tulsa, Oklahoma, for violating a municipal ordinance, petitioner referred to an alleged assailant as "chicken shit." In consequence he was prosecuted and convicted under an information that charged him with "direct contempt," in violation of another Tulsa ordinance, "by his insolent behavior during open court and in the presence of [the judge],

to wit: by using the language 'chicken-shit' . . . ." The Oklahoma Court of Criminal Appeals, in an unreported order and opinion, affirmed.

This single isolated usage of street vernacular, not directed at the judge or any officer of the court, cannot constitutionally support the conviction of criminal contempt. "The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice." *Craig* v. *Harney,* 331 U. S. 367, 376 (1947). In using the expletive in answering the question on cross-examination "[i]t is not charged that [petitioner] here disobeyed any valid court order, talked loudly, acted boisterously, or attempted to prevent the judge or any other officer of the court from carrying on his court duties." *Holt* v. *Virginia,* 381 U. S. 131, 136 (1965); see also *In re Little,* 404 U. S. 553 (1972). In the circumstances, the use of the expletive thus cannot be held to "constitute an imminent . . . threat to the administration of justice."

In affirming, however, the Court of Criminal Appeals rejected petitioner's contention that the conviction must be taken as resting solely on the use of the expletive. Rather, that court concluded from its examination of the trial record that, in addition to the use of the expletive, petitioner made "discourteous responses" to the trial judge. The court therefore held that the conviction should be affirmed because "[c]oupling defendant's expletive with the discourteous responses, it is this Court's opinion there was sufficient evidence upon which the trial court *could* find defendant was in direct contempt of court." (Emphasis supplied.)

However, the question is not upon what evidence the trial judge *could* find petitioner guilty but upon what evidence the trial judge *did* find petitioner guilty. There

is no transcript of the contempt proceeding since the proceeding was not stenographically recorded. The trial judge did, however, enter a "Judgment and Sentence," and we read that document clearly to establish that the trial judge rested the conviction upon the use of the expletive only. For the single charge of "insolent behavior" specified in the information was "to wit: by using the language 'chicken-shit' . . . ," and the Judgment and Sentence, referring expressly to the information, records that petitioner was "duly and legally tried and convicted of *said offense*" and, further, that "the Court does now hereby adjudge and sentence the said defendant for the *said offense* by him committed." (Emphasis supplied.) The Court of Criminal Appeals thus denied petitioner constitutional due process in sustaining the trial court by treating the conviction as a conviction upon a charge not made. *Cole* v. *Arkansas*, 333 U. S. 196 (1948).*

---

*Assuming, *arguendo*, (1) that the information sufficiently charged petitioner for both use of the expletive and his allegedly "discourteous responses," and (2) that there was evidence of the latter offense, reversal is still required, since the record fails to "negate the possibility," *Street* v. *New York*, 394 U. S. 576, 588 (1969), that the conviction was based solely or in part on the use of the expletive. "[W]hen a single-count . . . information charges the commission of a crime by virtue of the defendant's having done both a constitutionally protected act and one which may be unprotected, and a guilty verdict ensues without elucidation, there is an unacceptable danger that the trier of fact will have regarded the two acts as 'intertwined' and have rested the conviction on both together." *Ibid.* Cf. *Stromberg* v. *California*, 283 U. S. 359 (1931); *Thomas* v. *Collins*, 323 U. S. 516 (1945); *Bachellar* v. *Maryland*, 397 U. S. 564 (1970). And this principle is not limited, nor should it be, to cases in which the conviction may have been based on protected speech. See *Williams* v. *North Carolina*, 317 U. S. 287, 291–292 (1942). Here, the "Judgment and Sentence" not only does not dispel the possibility that petitioner's conviction was based solely or partially

The motion to proceed *in forma pauperis* and the petition for certiorari are granted, the judgment is reversed, and the case is remanded for further proceeding not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE POWELL, concurring.

I concur in the Court's *per curiam* opinion. I write briefly only to make clear my understanding of the limited scope of its holding. Whether the language used by petitioner in a courtroom during trial justified exercise of the contempt power depended upon the facts. Under the circumstances here, the imposition of a contempt sanction against petitioner denied him due process of law.

The phrase "chicken shit" was used by petitioner as a characterization of the person whom petitioner believed assaulted him. As noted in the Court's opinion, it was not directed at the trial judge or anyone officially connected with the trial court. But the controlling fact, in my view, and one that should be emphasized, is that petitioner received no prior warning or caution from the trial judge with respect to court etiquette. It may well be, in view of contemporary standards as to the use of vulgar and even profane language, that this particular petitioner had no reason to believe that this expletive would be offensive or in any way disruptive of proper courtroom decorum. Language likely to offend the sensibility of some listeners is now fairly commonplace in many social gatherings as well as in public performances.

I place a high premium on the importance of maintaining civility and good order in the courtroom. But

on the use of the expletive, but plainly supports the opposite conclusion.

before there is resort to the summary remedy of criminal contempt, the court at least owes the party concerned some sort of notice or warning. No doubt there are circumstances in which a courtroom outburst is so egregious as to justify a summary response by the judge without specific warning, but this is surely not such a case.

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACKMUN join, dissenting.

The Court summarily reverses petitioner's conviction for contempt of court on the grounds that the expletive which petitioner used could not by itself constitute a contempt, and that the additional "discourteous responses" petitioner made to the trial judge could not be properly considered by either the Municipal Court of Tulsa or the Oklahoma Court of Criminal Appeals which affirmed petitioner's conviction. I disagree with the Court as to each of these grounds.

I

Even the Court appears to shy away from a flat rule, analogous to the hoary doctrine of the law of torts that every dog is entitled to one bite, to the effect that every witness is entitled to one free contumacious or other impermissible remark. The Court, quoting language from *Holt* v. *Virginia*, 381 U. S. 131, 136 (1965), says that " '[i]t is not charged that [petitioner] here . . . talked loudly, acted boisterously, or attempted to prevent the judge or any other officer of the court from carrying on his court duties.' " But we do not have any transcript of petitioner's trial for contempt, and we simply do not know whether the evidence in that trial may or may not have shown that petitioner "talked loudly" or "acted boisterously" in the course of his rather unusual colloquy with the judge. Respondent in its brief in opposition

certainly makes no concession in petitioner's favor. If, as appears likely, neither party is in a position to furnish any judicially cognizable account of the petitioner's contempt trial, this hiatus in the record cannot be filled in by what amounts to no more than speculation in favor of petitioner's position:

> "If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality." *Adams* v. *United States ex rel. McCann,* 317 U. S. 269, 281 (1942).

See *Stroble* v. *California,* 343 U. S. 181, 198 (1952).

## II

Having assumed that the "single expletive" uttered by petitioner could not by itself constitutionally constitute a contempt, the Court goes on to hold that the Court of Criminal Appeals' reliance on petitioner's discourteous additional remarks during the course of his colloquy with the trial court, amounted to "treating the conviction as a conviction upon a charge not made," in violation of *Cole* v. *Arkansas,* 333 U. S. 196 (1948). While we do not have the transcript of the contempt trial, the record does show the colloquy which occurred between petitioner and the trial judge in the Municipal Court during petitioner's trial for an alleged violation of a Tulsa ordinance. During cross-examination in response to a question asked him by the assistant city prosecutor, the following exchange occurred (emphasis supplied):

> "Q. What did you do?
> "A. I sensed something from behind me and I turned maybe enough to look over my shoulder. At

the time I turned and looked over my shoulder I could see this guy's face and shoulders coming at me; almost simultaneously he hit me and he knocked me over on my back a bench down. Luckily, somebody grabbed him and pulled him back, and I got up off of my back after being knocked down on my back, wrenched my elbow, got up to a vertical posture where I would have some kind of defensibility and moved up to where I had some square footing.

"Q. What's defensibility?

"A. I think that would be a place where you were able to get your feet to stand square so you would be half ready for some chicken shit that had jumped you from behind.

"THE COURT: Mr. Eaton, you will have until tomorrow morning to show me why you should not be held in direct contempt of this Court. I'm not going to put up with that kind of language in this Court.

"THE WITNESS: *That's fine. I don't feel as though I need to put up with why I received this.*

"THE COURT: Mr. Eaton, did you hear what I just said?

"THE WITNESS: Yes, sir.

"THE COURT: That kind of language you used in this Court, I will not put up with any more of that talk in this courtroom. That was not responsive to any type of question whatsoever and I'm not going to have profanity in this courtroom and you're going to be held in direct contempt of this Court unless you can show me by tomorrow morning, cause why you should not be.

"THE WITNESS: *Fine. I'm not going to show you anything in the morning any more than I can show you now, but I think me being asked to specu-*

*late as to why someone would jump on me from*
*behind is not within any kind of realm of*
*prosecution—*

"THE COURT: The Court will be in recess."

On November 6, 1972, petitioner returned to the court in response to the judge's direction, and was at that time found guilty of direct contempt of court in violation of another Tulsa ordinance. Petitioner was fined $50 plus costs. Petitioner appealed his conviction to the Court of Criminal Appeals of Oklahoma. His principal contention in that court was that the use of the expletive "chicken shit" was not directed at the trial judge, and also that the conviction for direct contempt was based solely on the use of the expletive, in violation of his First and Fourteenth Amendment rights.

The Court of Criminal Appeals affirmed the conviction in this language:

"Counsel submits in his brief the expletive used by defendant . . . does not constitute direct contempt per se. We find the expletive to not be the only comment in question. After studying the entire portion of the record above reproduced, we note that the record clearly manifests in its entirety discourteous responses to the trial court upon the trial court's observations made during the course of trial. In *Champion* v. *State,* Okl. Cr., 456 P. 2d 571 (1969), this Court held such discourteous responses are sufficient to warrant a citation for contempt. Coupling defendant's expletive with the discourteous responses, it is this Court's opinon there was sufficient evidence upon which the trial court could find defendant was in direct contempt of court."

Yet the Court reverses petitioner's conviction on its determination that the trial judge "rested the conviction

upon the use of the expletive only." The Court reads the criminal information to charge solely the use of the expletive, and relies on the fact that the Judgment and Sentence refers specifically to the "offense" charged in the information.

The Court's reading of the language of the information seems to me much too restrictive; the information charged that petitioner "did . . . commit a contempt of court by his insolent behavior during open court and in the presence of Judge Thomas S. Crewson, to-wit: by using the language 'chicken-shit,' in the City of Tulsa Municipal Court . . . ." I am not prepared to say that this language would not put petitioner on notice that he was being charged with contempt of court by his course of conduct which began with the use of the expletive and ended with his discourteous remarks to the trial judge. In the absence of a transcript of the contempt proceedings, the Court is simply not in a position to know whether the trial judge based the contempt conviction solely on the use of the expletive, as the Court assumes, or whether the trial judge found petitioner guilty of contempt based on the course of conduct which began with the expletive and ended with the discourteous remarks.

The Oklahoma Court of Criminal Appeals apparently felt that the trial judge had considered the other remarks made by petitioner in finding him guilty of contempt.[1] Presumably that court was aware of what the

---

[1] There is no indication that petitioner was so unsophisticated or perhaps even so illiterate as to be unaware that his language was inappropriate for a courtroom. To the contrary, petitioner's statements in the courtroom, for example, "I think me being asked to speculate as to why someone would jump on me from behind is not within any kind of realm of prosecution," indicate that he was

information charged and what the judgment and sentence said. The "Judgment and Sentence" heavily relied upon by the Court for its reference to the "[said] offense" charged in the information is simply a preprinted standardized form in which the only thing to be filled in by the sentencing judge is the name of the defendant, the date of the judgment, the sentence imposed, and the ordinance the defendant is charged with violating.

*Cole* v. *Arkansas*, 333 U. S. 196 (1948), was a very different case from the instant one. There the petitioners were tried under an information charging them only with a violation of a section of a state statute making it an offense to promote an unlawful assemblage during a labor dispute. The trial court had instructed the jury on that section, and the jury had returned a conviction. On appeal to the Supreme Court of Arkansas, petitioners had contended that the section of the state statute violated the Constitution. Without passing on that question, the State Supreme Court sustained petitioners' convictions on the grounds that the information charged and the evidence showed that petitioners had violated *an entirely different section* of the same statute, which proscribed the distinct offense of using force and violence to prevent a person from engaging in a lawful vocation. This Court reversed, noting that the trial judge had, at the request of the prosecutor, read the former section to the jury and had instructed that the " 'offense . . . on trial in this case' " is the " 'promoting, encouraging or aiding of such unlawful assemblage by concert of action among the defendants as is charged in the information here.' " *Id.,* at 199.

---

not a victim of his own lack of awareness of the demands of the situation.

Here we have no basis to conclude with any degree of certainty that the petitioner's contempt conviction rests solely on the use of the expletive. Both *Street* v. *New York,* 394 U. S. 576 (1969), and *Williams* v. *North Carolina,* 317 U. S. 287 (1942), were cases where all of the relevant lower court proceedings were incorporated in the record before this Court, and ambiguity was present despite that fact.[2] Here, however, there is no such ambiguity arising out of a full record; there is instead a total absence of any record of the trial which resulted in the conviction which the Court now reverses. I have no doubt that a majority of this Court would refuse to reverse petitioner's conviction in this case if it had a full record before it, and the record indicated that at the contempt hearing the trial judge had made it clear to petitioner that he was being charged with contempt based on the course of conduct beginning with his use of the expletive and ending with his discourteous remarks to the judge. Whatever the force of *Street* and *Williams* on their own facts, where ambiguity was present despite the fact that there was a full record available in this Court, I would not extend them to reach this case, where petitioner has failed to preserve a full record of what transpired below.

This Court each year reviews thousands of cases from the state courts, many of which, like this one, are characterized by less than perfect records. Reversal of state court judgments of conviction, especially in summary fashion, without argument, should be reserved for palpably clear cases of constitutional error. *Adams* v.

---

[2] In addition, since I conclude that petitioner herein could constitutionally be punished for the use of the expletive, cases such as *Street* and *Williams* are for me inapposite, since they dealt with situations where the Court felt that convictions may have been based on constitutionally impermissible elements in the charges or in the evidence.

*United States ex rel. McCann,* 317 U. S. 269 (1942); *Stroble* v. *California,* 343 U. S. 181 (1952). Since here the basis for the Court's reversal is its own highly speculative judgment as to essentially factual matters on a record which offers no more support for petitioner than it does for respondent, I dissent.