FRANK, Acting Chief Judge,
dissenting.
I, too, concur in affirming the convictions and sentences imposed upon the appellants.
After thorough consideration of this matter and according warranted significance to the total setting culminating in Ms. Mokdad’s direct criminal contempt adjudication, I am persuaded that the majority reaches its conclusion upon two erroneous grounds — ipse dixit and a misapplication of Eaton v. City of Tulsa, 415 U.S. 697, 94 S.Ct. 1228, 39 L.Ed.2d 693 (1974). Thus, I find neither authority nor a meaningful premise for the conclusion that Ms. Mokdad’s “remark is not objectively sufficient to embarrass a court in the administration of justice.” The species of comment that the majority would deem “objectively sufficient” seemingly falls within a classification difficult to define. Perhaps the majority is saying that ugly comments directed at a judge are insulated from discipline if not of an obscene nature. I can, however, only speculate in attempting to comprehend verbal misconduct engaged in by a layman justifying punishment if utterance of the present words is immune from sanction. Cf. Murrell v. State, 595 So.2d 1049 (Fla. 4th DCA 1992).
In any event, the majority opinion in Eaton, relied upon by the majority in this case, unmistakably rests upon a distinction between aiming the angry words at a party and not the judge. I agree with the naked notion that calling a party “chicken shit” in the courtroom may be indecorous but something much less than an attack upon the administration of justice. It is apparent, however, that the majority in Eaton assessed the contemptuousness of the “chicken shit” expression by the fact that it was “not directed at the judge or any officer of the court.” 415 U.S. at 697, 94 S.Ct. at 1229, 39 L.Ed.2d at 695.1 am quick to concede that socially unacceptable expressions may not elevate to a contumacy because uttered in a courtroom. A different standard must exist, however, if the judiciary is to be free to function without discrediting ad hominem attacks.
The notion, borrowed from Eaton, that a remark “must constitute an imminent, not merely a likely, threat to the administration of justice,” is wholly misplaced when considered in the context of the instant proceeding. The quoted language is drawn from Craig v. Harney, 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546 (1947), a proceeding in which the publisher, the editor, and a journalist generated a series of calumnious news articles about a judge. Neither Eaton nor Craig involved a factual setting in any degree paralleling the one at hand — a direct, in-court attack upon a judge’s integrity. Based upon the following authority, the correct standard to be followed here is that which has been applied on numerous occasions where the focus was upon the contemnor’s intent to embarrass or lessen the dignity and authority of the trial court. See R.C. v. State, 648 So.2d 1258, 1259 (Fla. 3d DCA)(scatological language addressed to an officer of the court was contemptuous as it was “calculated to lessen [the court’s] authority or its dignity”)(quoting Ex parte Crews, 127 Fla. 381, 389,173 So. 275, 279 (Fla.1937)), rev. den., 659 So.2d 1088 (Fla.1995); Murrell v. State, 595 So.2d 1049, 1050 (Fla. 4th DCA 1992)(standard to be applied is based upon a determination of the conduct’s tendency to hinder the administration of justice and its calculation to cause harm); Suggs v. State, 509 So.2d 964 (Fla. 3d DCA 1987)(aceusation *385 that trial court was “crooked,” had the record so reflected, is contemptuous because it serves to “degrade, embarrass or hinder the court in the performance of its judicial duties”); Martinez v. State, 339 So.2d 1133 (Fla. 2d DCA 1976)(contempt defined as “conduct that is directed against the authority and dignity of the court”) (quoting Ex parte Earman, 85 Fla. 297, 95 So. 755 (Fla. 1923)), approved, 346 So.2d 68 (Fla.1977); Saunders v. State, 319 So.2d 118, 124 (Fla. 1st DCA 1975)(profanity addressed to judge was contemptuous as it was “calculated to embarrass and obstruct the court in the administration of justice and to lessen the authority and dignity of the trial court”), cert. discharged, 344 So.2d 567 (Fla.1977).
The standard I deem most appropriate is the one suggested by the dissent in Eaton. It commits the reviewing court to an examination of the record in its entirety to determine if the offensive words exist in isolation. Eaton, 415 U.S. at 701-08, 94 S.Ct. at 1231-34 (Rehnquist, J., dissenting, joined by Burger, C.J., and Blackmun, J.). Here, from those portions of the record alluded to by my colleagues, there can be no mistake that the trial court judge had been immersed in disrespectful and improper behavior well prior to finding Ms. Mokdad in contempt.
I decline adding my imprimatur to Ms. Mokdad’s verbal abuse of the trial court judge; I would affirm the direct contempt adjudication of Ms. Mokdad.