In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00433-CR
NO. 09-22-00434-CR
NO. 09-22-00435-CR

_____

**THOMAS JAMES MAHON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 9th District Court
Montgomery County, Texas
Trial Cause Nos. 21-03-03821-CR, 21-03-03822-CR, 21-03-03823-CR

**MEMORANDUM OPINION**

The State charged Thomas James Mahon in three indictments with three offenses: two counts of deadly conduct discharging a firearm, third-degree felonies, and one count of aggravated assault with a deadly weapon, a first-degree felony. *See* Tex. Penal Code Ann. §§ 22.02(a)(2); 22.05(b)(1). In cause numbers 21-03-03821-CR and 21-03-03823-CR Mahon was charged with "knowingly discharg[ing] a

1

firearm at or in the direction of an individual," namely, "Chris Smith", and separately "Clark Jones". In cause number 21-03-03822-CR, Mahon was charged with "intentionally, knowingly, or recklessly caus[ing] bodily injury to "Jack Green," by SHOOTING THE COMPLAINANT, and during the commission of said assault, the defendant did then and there use or exhibit a deadly weapon, to-wit: A FIREARM."[1]

On August 4, 2022, the trial court held a plea hearing. In an open plea, Mahon pleaded guilty to the offenses, the trial court accepted Mahon's pleas and reset the case so a presentencing investigation report could be prepared. On December 2, 2022, the trial court held a sentencing hearing. After testimony from Green, the trial court sentenced Mahon in each case; in cause number 21-03-03822-CR to confinement for twenty years, and in cause numbers 21-03-03823-CR and 21-03-03821-CR to confinement for ten years to be served concurrently, and in each case the trial court assessed a $0 fine.

### Issues on Appeal

Mahon argues six issues on appeal. First, he contends that the sentences imposed by the trial court violate his due process "because [t]he Trial Court[] refus[ed] to consider the full range of punishment[.]" Second, he argues that he was

---

[1]We have used pseudonyms to protect the privacy of several individuals who are mentioned in the opinion. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect to the victims' dignity and privacy throughout the criminal justice process").

denied due process when the trial court based its decision on a criminal offense not listed in the indictment. Third and fourth, he argues that the twenty-year sentence imposed by the trial court is "[g]rossly [d]isproportionate" and is a violation of the cruel and unusual punishment clause of the United States Constitution and the Texas Constitution. Fifth and sixth, his convictions and punishments for Aggravated Assault with a Deadly Weapon and his two convictions for Deadly Conduct discharging a Firearm violated double jeopardy. We affirm.

## Background

We recite only the facts necessary for the resolution of the issues on appeal. Mahon was arrested for shooting at police officers Green, Smith, and Jones while the officers were investigating a family violence call on his property.

At the punishment hearing, Green testified that he is a police officer with the Montgomery County Sherriff's Office. On March 18, 2021, he received notifications from dispatch of multiple calls from the same generalized location, requesting police presence due to family violence. After finishing his current call, Green went to the location at around 8:30 that night. A second unit, Deputy Smith, accompanied Green. He described the area as "rural" with "very little artificial lighting[.]" The officers arrived and "pulled probably 200 yards – or 100 yards in front of the actual location of where the shooting occurred." He testified that there were communication issues from the dispatchers, that Jones was aware of a firearm on the premises and

3

requested backup, but that Green was told only that it was a "family violence" call. The three officers exited their vehicles and began to use their flashlight to look for the address of the call. Green testified if was "very dark[,]" and properties were not close to the roadway, but he observed three structures "further off in the distance." As they approached Mahon's gate, Jones stated he was going to call the reportee. Green then scanned Mahon's property with his flashlight and observed Mahon "in a low ready position…with an object in his hand that I believed to be a firearm." Green immediately drew his weapon, he heard Mahon yell "Fuck you[,]" and a gunshot "went off[.]"Green said he was shot in the front part of his head. He then began shooting and retreated to a ditch to "obtain some type of concealment and intentional cover." Green heard additional gunshots and was also hit in his leg. Green said he received medical treatment for gunshot wounds to his head, bicep, and leg.

**Issue One**

In his first issue, Mahon argues that the trial court violated his right to due process by arbitrarily refusing to consider the entire range of punishment for his offenses. Mahon contends that the trial court was not a fair and impartial tribunal because the trial judge told him "the case 'deserve[d] the maximum punishment[]'" at the sentencing hearing and sentenced him to the "maximum term" without considering a lesser sentence and without considering mitigating circumstances presented by Mahon. The State argues that Mahon has not shown the trial court was

4

biased or that it arbitrarily failed to consider the full punishment range. We agree with the State.

The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law[.]" *See* U.S. CONST. amend. XIV, § 1. Similarly, the Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities . . . except by the due course of the law of the land." Tex. Const. art. I, § 19. "The touchstone of due process is fundamental fairness." *Euler v. State*, 218 S.W.3d 88, 91 (Tex. Crim. App. 2007). Accordingly, "[t]he Constitutional mandate of due process requires a neutral and detached judicial officer who will consider the full range of punishment and mitigating evidence." *Buerger v. State*, 60 S.W.3d 358, 363-64 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786-87 (1973)). A trial court denies a defendant due process by arbitrarily refusing to consider the entire range of punishment for an offense. *Ex parte Brown*, 158 S.W.3d 449, 454, 456 (Tex. Crim. App. 2005). Likewise, a trial court denies a defendant due process when it refuses to consider mitigating evidence and imposes a predetermined punishment. *Buerger*, 60 S.W.3d at 364. However, in the absence of a clear showing to the contrary, a reviewing court must presume that the trial court was neutral and detached in sentencing the defendant and considered the full range of punishment. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim.

5

App. 2006); *Jaenicke v. State*, 109 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (op. on reh'g).

Here, the record does not reflect that Mahon objected to the trial court's alleged failure to consider the full range of punishment at the trial court level. Nevertheless, Mahon argues that under the Texas Court of Criminal Appeals' decision in *Ex parte Brown*, he was not required to make a contemporaneous objection because the evidence that the court failed to consider the full range of punishment was ambiguous. *See* 158 S.W.3d at 453 & n.3.

To preserve error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. Tex. R. App. P. 33.1(a). But as the Court of Criminal Appeals determined, Rule 33.1 is not absolute. *See Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014). In *Grado*, the Court of Criminal Appeals provided the following guidance in determining whether waiver applies to the appellant's complaint.

> The general requirement that a contemporaneous objection must be made to preserve error for appeal is firmly established in Rule of Appellate Procedure 33.1. But the rule is not absolute. In *Marin*, we held that the general preservation requirement's application turns on the nature of the right allegedly infringed. We separated defendants' rights into three categories:
>
> > • The first category of rights are those that are "widely considered so fundamental to the proper functioning of our adjudicatory process . . . that they cannot be forfeited . . . by inaction alone." These are considered "absolute rights."

6

• The second category of rights is comprised of rights that are "not forfeitable"—they cannot be surrendered by mere inaction, but are "waivable" if the waiver is affirmatively, plainly, freely, and intelligently made. The trial judge has an independent duty to implement these rights absent any request unless there is an effective express waiver.

• Finally, the third category of rights are "forfeitable" and must be requested by the litigant. Many rights of the criminal defendant, including some constitutional rights, are in this category and can be forfeited by inaction.

Rule 33.1's preservation requirements do not apply to rights falling within the first two categories. Barring these two narrow exceptions, all errors—even constitutional errors—may be forfeited on appeal if an appellant failed to object at trial.

*Id*. at 738-39 (citations and footnotes omitted). *Grado* specifically decided that the right for the trial court to consider the appropriate punishment range falls into the second category and are forfeitable only by an "effective waiver[.]" *Id*. at 743. Accordingly, although Mahon failed to object at trial regarding the trial court's failure to consider the entire punishment range, absent an express waiver, he did not waive his objection for review of this issue on appeal. *See id*.

The punishment range for aggravated assault with a deadly weapon, a second-degree felony, is two to twenty years and a fine of up to $10,000. Tex. Penal Code Ann. §§ 22.02(b), 12.33. Additionally, the punishment range for deadly conduct discharge of a firearm is two to ten years and a fine up to $10,000. *See id*. §§ 22.05(b), 12.34. The trial court's sentence falls within these ranges, although it does impose the "maximum term," as Mahon contends in his brief. *See id*. §§ 22.02(b),

7

12.33, 22.05(b), 12.34. The record reflects that the trial court heard arguments from both the prosecutor and defense counsel and reviewed the evidence before assessing punishment. During closing argument, Mahon's attorney advised the trial court of several mitigating circumstances, including Mahon's neurological and psychological issues, his recent medical reports, his sobriety since his arrest, his criminal history, and his advanced age. The trial court also reviewed letters from Mahon's brother, neighbor, and bail bondsman requesting leniency. During the sentencing hearing, the trial court reviewed a copy of the presentence investigation report and heard testimony from Green regarding his injuries and the trauma he has experienced since the shooting. Green testified to the following regarding his and the other officers' experiences after the shooting.

> [GREEN]: Well, initially it was inability to sleep. And while the shooting was going on and while we were walking up on the property, one of his neighbors has peacocks. And I know that's weird to be something to infatuate on or focus on. But I kept hearing that. I would wake up in panics. It would consistently occur. So they started putting me on medication for that because I was sleeping two, three hours a night. And some nights I would just drink and just depend on that. So they started treating that. And then on July 4th -- sorry -- the week before July 4th, I had a -- I don't know what the proper term would be. I call it a hallucination, but it's part -- it's kind of half and half because I knew it wasn't a dream, but I still had the physical responses so I could still see it at my apartment complex. There's a guy inside my apartment that -- I mean, I already lived there for a year, and I see him every night when I would take my dog out. But he sits on the balcony and smokes cigars. And when I was out there, he lit up the cigar. And I saw the light, and I was back in Magnolia in the ditch. And whenever I looked down at my hand, it was covered in blood. And I panicked and hid in the closet until my wife could calm me down, which we were able to.

8

And it didn't occur for another week or two until we went to July 4th because I was like -- kept telling myself, no, I'm good, I'm good. The dreams at that point were no longer consistent. So we went to July 4th on -- it's one of the bridges in The Woodlands. They do a fireworks show every year. And then that's when I had my worst, I guess, episode.

[THE STATE]: Okay. Can you tell us a little bit about that?

[GREEN]: Yeah. So when we arrived, you know, I was already having problems with just being around people and just general anxiety. So I know we got there early. And we got -- we're basically at the very end of the bridge so where people wouldn't gather, which I'm thankful that we did. And I was perfectly fine even with the people around. I was doing okay. And at that time I was on no medication other than, I believe, just Adderall for ADHD which I was diagnosed in the '90s. So that was the only medication I was on. And the fireworks show started. I had no problems at the -- you know, the first couple minutes. And then there was just one firework that just sounded like a shotgun, and I was there. I was back in Magnolia, but I was still consciously aware that I was on a bridge in The Woodlands, but I had the physical response of the shooting. I could see the shooting. I could see the ditch. I could see Smith to the left of me enough so that I was -- my wife observed it enough to take my pistol off of me because it got that bad. And we have a training sergeant that works for the academy that I really don't even have a relationship with. But he was working an extra job, and he road by on the bicycle. And I was on the street. And when I saw him ride by on the street while I'm shooting, I'm like what the hell is that? That's what snapped me back and we took off. And that's when I started going to therapy pretty consistently, and they started putting me on antidepressants and -- or I think it's – whatever Lexapro is what they're treating with at the moment.

[THE STATE]: So that was in July of 2021?

[GREEN]: July 4th exactly.

[THE STATE]: Have you continued to seek treatment from that day?

[GREEN]: Consistently.

9

[THE STATE]: Do you still do that to this day?

[GREEN]: Yes, sir.

[THE STATE]: Are you still being treated with medication for that?

[GREEN]: Yes and no. More so we keep trying and trying different stuff. So far the only things that have worked I'm not technically allowed to take per department mental policy. So it's been a -- just a consistent battle with trying to find something because I would say the main issue is just general panic disorder is what they finally or recently diagnosed me with. Just random panic attacks, one to two times a week at nighttime. And it only happens at nighttime. I don't know why, but that's the consistent issue.

[THE STATE]: And, Deputy, you know, from our conversations today that Judge has the decision to make of probation versus prison time. Is there anything else you want this Court to know before making that decision? A. Oh, man. All I can say is that I believe in the State. I believe in the process and whatever the judge deems fit. It's in the Court's hands. I say that you put me in a prison mentally. I believe you need to go to prison. I spoke with the other deputies, and I was the lucky one even though some people say, like, hey, you know, you got shot. That sucks. No, no. Deputy Smith and Deputy Jones– Jones was a rookie at the time. He did, like, a month. That dude was going to family violence calls the next night. No one gave a shit about him. No one called him. No one asked him how he was doing. Smith calls me all the time. We have to do peer support through ourselves. No one truly gives a shit. And that's -- that's the crappy part just because the round hit me, so I was able to get help thankfully. And I've talked to all them, and they all agree that probation to us is a slap in the face. But, again, if that's what's ruled then that's what's ruled. We move forward and we push forward.

After receiving argument from both sides regarding the mitigating and aggravating factors, the court announced its sentence:

THE COURT: Mr. Mahon in Cause No. 21-03-03821-CR, the Court finds you guilty of the third-degree felony offense of deadly conduct

10

and assesses your punishment at 10 years confinement in the Texas Department of Criminal Justice Institutional Division. I am going to give you credit for the time that you've already served.

In Cause No. 21-03-03822-CR, the Court finds you guilty of the second-degree felony offense of aggravated assault and assesses your punishment at 20 years confinement in the Texas Department of Criminal Justice Institutional Division. I am going to give you credit for the time that you've already served.

In Cause No. 21-03-03823-CR, the Court finds you guilty of the third-degree felony offense of deadly conduct and assesses your punishment at 10 years confinement in the Texas Department of Criminal Justice Institutional Division. I am going to give you credit for the time that you've already served.

I understand everything you've done since you were arrested, but there's some criminal offenses that deserve the maximum punishment and this is one of them. You almost killed a police officer, and that's just not something that this Court can have sympathy for. All these sentences will run concurrently. You're hereby remanded to the custody of the sheriff of Montgomery County, Texas where you'll be remanded to the Texas Department of Criminal Justice Institutional Division where you will carry out the remainder of your sentences. Good luck to you, sir.

Nothing in the record suggests that the trial judge refused to consider the mitigating circumstances presented by Mahon's attorney, imposed a predetermined punishment, or arbitrarily refused to consider the entire range of punishment in assessing Mahon's sentence. Instead, the record reflects that the trial court listened to the arguments presented by both sides, reviewed the record before it, and determined a twenty-year sentence and two ten-year sentences were an appropriate punishment. Further, the judge's comments during the revocation hearing

11

demonstrate that he was aware of the range of punishment for aggravated assault with a firearm, and nothing in the record rebuts the presumption that he considered this range in assessing Mahon's punishment. [3RR 54:6-16] We conclude, therefore, that Mahon has not met his burden of demonstrating that the trial court arbitrarily failed to consider the full range of punishment. We perceive no denial of due process under the state or federal constitution. Accordingly, we overrule Mahon's first point of error.

**Issue Two**

In his second issue, Mahon argues that he was denied due process when the trial court based its punishment decisions on an offense not charged in the indictment. Focusing on the court's comment that Mahon "almost killed a police officer[,]" Mahon asserts, "The trial court erred by considering extrajudicial factors that were not properly before the court or admitted into evidence when fashioning Appellant's sentence" because he was neither indicted for, nor pleaded guilty to, an offense directed at a peace officer. Mahon also argues the evidence did not show he knew any of the complainants was a peace officer, nor that any officer was "almost killed[.]"

Mahon cites *Eaton v. Tulsa*, 415 U.S. 697, 699, 94 S. Ct. 1228, 1230 (1974), *Garner v. Louisiana*, 368 U.S. 157, 164, 82 S. Ct. 248, 252 (1961), and *Schmuck v. United States*, 489 U.S. 705, 717, 109 S. Ct. 1443, 1451 (1989), as authority for the

proposition that it is a violation of due process to convict a defendant for an offense with which he has not charged in the indictment. But Mahon was not convicted of any offense for which he was not indicted. Instead, he complains that the trial court considered, during the punishment phase of the trial, the fact that Green was a peace officer. As the Court of Criminal Appeals has explained,

> "The factfinder's role during the guilt phase is different from its role during the punishment phase. Unlike the guilt phase, where the factfinder must decide discrete factual issues, deciding what punishment to impose is a 'normative process, not intrinsically factbound.' Thus, what is 'relevant' to assessing punishment is 'a function of policy rather than relevancy.' Evidence is relevant if it helps the factfinder decide what sentence is appropriate for a particular defendant given the facts of the case." *Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009), citing *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008), and *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999).

Mahon did not object to the admission of evidence that Green was a peace officer, nor did he object to the trial court's statement during sentencing referring to the fact Green was a peace officer. As indicated above, it is generally necessary for a defendant to make a timely and specific objection in the trial court in order to preserve an issue for appellate review. See Tex. R. App. P. 33.1(a)(1). That said, even if the issue had been preserved, Texas law permits trial courts to consider a wide array of evidence during the punishment phase of a trial:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant,

13

his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim Proc. Ann. art. 37.07 § 3(a)(1).

"Of course, neither the statute's demonstrative list nor any general formula could fully describe the universe of evidence that might plausibly be considered 'relevant to sentencing.'" *Beham v. State*, 559 S.W.3d 474, 479 (Tex. Crim. App. 2018) "[T]he sentencing authority has always been free to consider a wide range of relevant material." *Payne v. Tennessee*, 501 U.S. 808, 820-21 (1991) (citation omitted). The statute expressly grants the trial court discretion to allow evidence it "deems relevant[.]" Tex. Code Crim Proc. Ann. art. 37.07 § 3(a)(1). Therefore, we review a trial court's relevancy determination under on an abuse-of discretion standard. *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007). "A trial court abuses its discretion when it acts outside the zone of reasonable disagreement."

The trial court received evidence, without objection, that Green was a peace officer and that one of the shots fired by Mahon struck him in the head, just above his left eyebrow. Such were the "the circumstances of the offense[.]" Tex. Code Crim Proc. Ann. art. 37.07 § 3(a)(1). The trial court may have reasonably inferred from these circumstances that a peace officer could have been killed as a result of

14

Mahon's conduct. Considering the trial court's broad discretion to deem a wide range of evidence to be relevant in the normative process of sentencing, we cannot say the trial court's exercise of decision was outside the "zone of reasonable disagreement." *McGee*, 233 S.W.3d at 318.

We conclude that the trial court did not abuse its discretion by considering Green's occupation and injuries during Mahon's sentencing. We overrule Mahon's second issue.

### Issues Three and Four

In his third and fourth issues, Mahon argues that his sentence of twenty years for Aggravated Assault with a Deadly Weapon constituted cruel and unusual punishment and is grossly disproportionate to the offense in violation of the U.S. and Texas constitutions. *See* U.S. CONST. amend. VIII; Tex. Const. art. I, § 13.

Ordinarily, to preserve an error for appellate review, the complaining party must present a timely and specific objection to the trial court and obtain a ruling. Tex. R. App. P. 33.1(a). Generally, the failure to specifically object to an alleged disproportionate or cruel and unusual sentence in the trial court or in a post-trial motion waives any error for purposes of appellate review. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); *Noland v. State,* 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). The record reflects and Mahon concedes on appeal that he did not object to his sentence at the time it was

pronounced or in a post-trial motion. We therefore conclude that Mahon waived any complaint that his sentence was unconstitutionally disproportionate or unreasonable for purposes of appellate review. *See* Tex. R. App. P. 33.1(a). That said, even if Mahon had properly preserved his complaints for our review, after reviewing the record we conclude that his argument that his sentence is disproportionate and unreasonable under the Eighth Amendment of the United States Constitution and Article I, section 13 of the Texas Constitution lacks merit.

Generally, a sentence that is within the range of punishment established by the Legislature is not excessive, cruel, or unusual, and will not be disturbed on appeal. *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016); *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). Rarely will an appellate court consider a punishment range for the offense excessive, unconstitutionally cruel, or unusual under either Texas law or the United States Constitution. *See Kirk v. State*, 949 S.W.2d 769, 772 (Tex. App.—Dallas 1997, pet. ref'd); *see also Jackson v. State*, 989 S.W.2d 842, 846 (Tex. App.—Texarkana 1999, no pet.). An exception to this general rule is recognized when the sentence is grossly disproportionate to the offense. *Solem v. Helm*, 463 U.S. 277, 289-90 (1983). Except for cases involving capital punishment, successful challenges to the proportionality of particular sentences are exceedingly rare. *Id.*

In determining whether a sentence is grossly disproportionate to a particular defendant's crime, we consider (1) the severity of the sentence considering the harm caused to the victim; (2) the defendant's culpability; and (3) the defendant's prior adjudicated and unadjudicated offenses. *Simpson*, 488 S.W.3d at 323. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, we then compare the defendant's sentence with the sentences of other offenders in Texas and with the sentences imposed for the same crime in other jurisdictions. *Id*. "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id*.

As Mahon challenges only the twenty-year sentence for aggravated assault with a deadly weapon on appeal, we address only that crime in our review. Aggravated assault with a deadly weapon is a second-degree felony, which carries a punishment range of confinement in the Institutional Division for a term of not more than twenty years or less than two years. Tex. Penal Code Ann. §§ 22.02(b), 12.33. In addition to imprisonment, a second-degree felony may also be punished by a fine not to exceed $10,000. *Id*. § 12.33(b). As discussed above, the trial judge assessed Mahon's punishment at twenty years' incarceration and did not impose a fine. The trial court heard testimony that the officers were responding to a family violence call at Mahon's property, and that it was rural and dark, with very little artificial light. As the officers approached Mahon's property, Mahon is observed in a "ready"

17

position with his gun, and fires indiscriminately into the night at the officers, continuing to shoot after Green retreats to a ditch and returns fire.

Having reviewed the entire record, we cannot conclude that this is one of those rare cases that leads to the inference that the sentence imposed was cruel and unusual or grossly disproportionate to the offense. *See Solem*, 463 U.S. at 289-90; *Simpson*, 488 S.W.3d at 323; *see also Kirk*, 949 S.W.2d at 772. Accordingly, we overrule issues three and four.

### Issues Five and Six

In issues five and six, Mahon argues that his constitutional right against double jeopardy was violated when he was charged and convicted on aggravated assault with a deadly weapon and two counts of deadly conduct discharge of a firearm. *See* U.S. CONST. amend. V; Tex. Const. art. I, § 14. He challenges his convictions for deadly conduct discharge of a firearm against Bowen and Jones arguing that the charges arose out of a single criminal transaction and was based on "proof of the same facts" as his aggravated assault with a deadly weapon charge, and that "although [the State] used different language to describe the prohibited conduct, the offenses are functionally equivalent." Mahon did not allege double jeopardy in the trial court and acknowledges on appeal that he did not object to double jeopardy either pretrial, during his plea, or subsequent punishment hearing. *In Gonzalez v. State*, the Texas Court of Criminal Appeals held that double jeopardy claims could

18

be forfeited by procedural default—simply by failing to make an objection at trial. 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). But there is an exception which allows a double jeopardy claim to be raised for the first time on appeal when two conditions are met: (1) the undisputed facts show a double jeopardy violation is apparent on the face of the record; and (2) enforcement of the usual rules of procedural default serves no legitimate state interest.[2] *Id.* Here, we cannot say that a double jeopardy claim is apparent from the face of the record. The exception thus does not apply, and Mahon forfeited by procedural default his double jeopardy claim.

That said, even if Mahon had preserved his double jeopardy claim, "[f]or offenses to be the 'same' for double-jeopardy purposes, they must be the same both in 'law' and in 'fact.'" *Aekins v. State*, 447 S.W.3d 270, 283 (Tex. Crim. App. 2014) (Keller, P.J., concurring) (citing *Ex parte Hawkins*, 6 S.W.3d 554, 557 n.8 (Tex. Crim. App. 1999)). Under the *Blockburger* same-elements test, we look to see whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars additional punishment and successive prosecution. *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). When those offenses are proscribed by

---

[2]The Texas Court of Criminal Appeals has also indicated that a double jeopardy claim may also be cognizable on post-conviction habeas review so long as the same two conditions are met. *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

19

a single statute or are otherwise the same under an "elements" analysis, the protection against double jeopardy is not violated if the offenses constitute separate allowable units of prosecution. *Ex parte Benson*, 459 S.W.3d 67, 73 (Tex. Crim. App. 2015). "A 'units' analysis consists of two parts: (1) what the allowable unit of prosecution is, and (2) how many units have been shown." *Id*. (footnote omitted). "The allowable unit of prosecution of an offense turns on statutory construction and usually requires ascertaining the gravamen, or gravamina, of the offense." *Ex parte Castillo*, 469 S.W.3d 165, 169 (Tex. Crim. App. 2015). Even when those offenses are defined by the same penal section, the protection against double jeopardy is not violated if the offenses are distinguished from one another by discrete acts that are separate violations of the same penal section and constitute separate units of prosecution. *Benson*, 459 S.W.3d at 73.

Aggravated assault with a deadly weapon is a crime of assault. *State v. Schunior*, 506 S.W.3d 29, 38 (Tex. Crim. App. 2016) ("The offense of aggravated assault, Sec. 22.02, is comprised of two elements- 'assault as defined in Sec. 22.01' and an aggravating factor[.]"); Tex. Penal Code Ann. § 22.02(a)(2). "The allowable unit of prosecution for an assaultive offense in Texas is each victim." *Shelby v. State*, 448 S.W.3d 431, 439 (Tex. Crim. App. 2014); *see also Phillips v. State,* 787 S.W.3d 391, 395 (Tex. Crim. App. 1990). Thus, in an assault crime each victim constitutes a separate offense for which he may be prosecuted and convicted. *See Lang v. State*,

20

183 S.W.3d 680, 685 (Tex. Crim. App. 2006). For deadly conduct with a firearm, its unit of prosecution is measured by the discharge of the firearm and not the number of victims. *Miles v. State*, 259 S.W.3d 240, 248–49 (Tex. App.–Texarkana 2008, pet. ref'd); *Lozano v. State*, 577 S.W.3d 275, 278 (Tex. App.—Houston [14th Dist.] 2019, no pet.); Tex. Penal Code Ann. § 22.05(b)(1).

In this case, Mahon's indictments allege the following:

> Cause Number 21-03-03821-CR: Thomas James Mahon on or about March 18, 2021, and before the presentment of this indictment, in the County and State aforesaid, did then and there knowingly discharge a firearm at or in the direction of an individual, namely, [Chris Smith];

> Cause Number 21-03-03822-CR: Thomas James Mahon, on or about March 18, 2021, and before the presentment of this indictment, in the County and State aforesaid, did then and there intentionally, knowingly, or recklessly cause bodily injury to [Jack Green], by SHOOTING THE COMPLAINANT, and during the commission of said assault, the defendant did then and there use or exhibit a deadly weapon, to-wit: A FIREARM; [and]

> Cause Number 21-03-03823-CR: Thomas James Mahon on or about March 18, 2021, and before the presentment of this indictment, in the County and State aforesaid, did then and there knowingly discharge a firearm at or in the direction of an individual, namely, [Clark Jones].

Mahon pleaded guilty to all three indictments. For aggravated assault with a firearm, Mahon was convicted for shooting Green. For the deadly conduct with a firearm, Mahon was convicted for discharging a firearm at Smith and Jones. Each indictment tracks an allowable unit of prosecution for each crime. *See Lang*, 183 S.W.3d at 685; *Miles*, 259 S.W.3d at 248–49. While not apparent from the indictment, evidence at

Mahon's sentencing hearing and in the pre-sentencing report shows that Mahon fired multiple shots that evening at the officers approaching his property, some shots hitting Green, followed by other shots at or in the direction of two other officers. We find no double jeopardy violation even though the crimes occurred in the same criminal transaction. We conclude that Mahon did not face multiple punishments for a single offense and there was no violation of the double jeopardy clause. We overrule Mahon's fifth and sixth issues.

Having overruled all of Mahon's issues on appeal, we affirm the trial court's judgments.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on August 13, 2024
Opinion Delivered August 28, 2024
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.

22